DIXIE BERNHARDT, APPELLANT, V. COUNTY OF SCOTTS BLUFF, A
POLITICAL SUBDIVISION, APPELLEE.
482 N.W.2d 262

Filed April 3, 1992.    No. S-91-723.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellant.

James R. Hancock, of Hancock & Denton, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Dixie Bernhardt appeals a Workers' Compensation Court three-judge panel's finding that she failed to prove that an injury to her left wrist was caused by a November 23, 1985, work-related accident. The panel dismissed Bernhardt's claim. We affirm.

In summary, Bernhardt's assignments of error claim that the Workers' Compensation Court failed to find that the appellant sustained her burden of proving that there was a causal connection between the work-related injury and her current disability.

## STANDARD OF REVIEW

An appellate court in reviewing an appeal from the Workers' Compensation Court is controlled by the following legal principles:

> [A] claimant has the burden to prove by a preponderance of the evidence that the claimant's employment proximately caused an injury which resulted in disability compensable under the Workers' Compensation Act. . . . The issue of causation of an injury or disability is one for determination by the trier of fact, whose findings will not be set aside unless clearly wrong.

*Liberty v. Colonial Acres Nsg. Home, ante* p. 189, 190, 481 N.W.2d 189, 191 (1992). "In testing the sufficiency of the evidence to support findings of fact, the evidence must be considered in the light most favorable to the successful party." *Morton v. Hunt Transp., ante* p. 63, 64, 480 N.W.2d 217, 219 (1992). An appellate court "may not substitute its judgment for that of the compensation court but, rather, 'simply review[s] the decision for error.' " *Kraft v. Paul Reed Constr. & Supply,* 239 Neb. 257, 263, 475 N.W.2d 513, 517 (1991).

## BERNHARDT'S MEDICAL HISTORY

The record reveals that Bernhardt has a history of medical problems with her hands prior to November 23, 1985, the date of the incident for which she now claims disability.

The appellant was in a car accident in 1978, in which she fractured a bone in her right wrist and required surgery. As a direct result of the injuries suffered in the car accident, Bernhardt developed carpal tunnel syndrome in her right hand and underwent surgery for that condition in 1980. Added stress was placed on her left hand during recovery from the right hand surgery. Bernhardt then developed carpal tunnel syndrome in her left hand that required surgery, which was performed 6 weeks after the right hand surgery. Her right hand was weaker and slower than it had been prior to 1978. Bernhardt claims that she compensated for the weakness by using her left hand more than she ordinarily would have. In 1984, the appellant was stabbed in her right hand when she was working for the Game

and Parks Commission.

On November 16, 1985, 1 week prior to the date of the accident for which she claims disability, Bernhardt was working in the juvenile facility of the Scotts Bluff County Jail when she slammed a jail door shut, spraining her right index finger.

In 1988, Bernhardt suffered from tendinitis in her left wrist; distal radioulnar joint degenerative arthritis of her left wrist; and midcarpal instability, or ligamentous laxity between two rows of wrist bones, in her left hand. The appellant underwent two surgeries in 1989 to fuse the wrist bones for treatment of the midcarpal instability. While the fusion relieved most of her pain, she lost some flexibility of her left wrist, rendering her 30 percent permanently disabled in her left upper extremity.

## BERNHARDT'S CURRENT CLAIM

On November 1, 1989, Bernhardt filed a petition with the Nebraska Workers' Compensation Court claiming that her disability was caused by a latent injury to her left wrist caused by an accident she had suffered 4 years earlier on November 23, 1985, while she was employed as a matron at the Scotts Bluff County Jail.

The date and circumstances of discovery of the latent injury were not pled.

Ostensibly, this petition is subject to being barred by the statute of limitations: a claim for compensation must be filed within 2 years from the date of the accident, Neb. Rev. Stat. § 48-137 (Reissue 1988), and this petition was filed after approximately 4 years. If an injury is deemed to be, at the outset, latent and progressive, the statute of limitations does not begin to run until the employee discovers or should have discovered she or he has a compensable disability. See *Cemer v. Huskoma Corp.*, 221 Neb. 175, 375 N.W.2d 620 (1985). The petition must allege some excuse tolling the operation and bar of the statute, see *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 343 N.W.2d 753 (1984), or be subject to demurrer, see *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989). Bernhardt's petition does not state facts sufficient to allege the date of discovery of a latent injury. When it is not apparent from the face of the petition that the action is

barred, the affirmative defense of statute of limitations must be raised in the answer. *Id*.

The defendant in Bernhardt's case has waived the statute of limitations as a defense by failing to demur to the petition or raise that affirmative defense in its answer. See *id*.

Bernhardt began her employment as a matron at the Scotts Bluff County Jail in early October 1985. Her duties required her to move about the various cellblocks within the facility. She had to pass through many sets of jail doors which were made of heavy steel bars. Bernhardt carried a set of keys to these doors which she kept behind her on a ring hooked to her belt.

On the morning of November 23, 1985, one of her tasks at the adult jail was to "pull mop buckets," or remove from the cells the cleaning supplies that had been placed there earlier so that the inmates could do their own cleaning. Bernhardt was assisted on November 23 by an inmate trustee. The trustee and the appellant were at the last cell tank when Bernhardt placed her left hand against the cell doorframe as she spoke to an inmate. The trustee slammed the door closed, catching Bernhardt's ring and middle fingers of her left hand in the mechanism of the door. The door automatically locked. Bernhardt was unable to free her fingers from the door until she reached around with her right hand and obtained the keys off her belt and unlocked the door.

The appellant's fingers began to swell and throb, her whole left hand began to discolor, and she was in great pain. She testified that her whole hand hurt. Bernhardt went to the West Nebraska General Hospital emergency room, where she was treated for contusions to the ends of her left hand's ring and middle fingers.

Bernhardt argues that this injury was the cause of her alleged latent disability for which she now seeks compensation. The record supports the Workers' Compensation Court's conclusion that no such causal connection was established.

Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish a causal relationship between the incident and the injury or disability. *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991).

To support her position that there was a causal relationship between her accident of November 23, 1985, and her present disability, Bernhardt offered the opinions of three experts.

In reviewing expert medical testimony, we are reminded that expert medical testimony based upon "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court. *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992). Moreover, triers of fact are not required to take an expert's opinion as binding upon them, *Liberty v. Colonial Acres Nsg. Home, ante* p. 189, 481 N.W.2d 189 (1992), and a fact finder or trier of fact may accept or reject an opinion from an expert witness, *Wiese v. Becton-Dickinson Co.*, 239 Neb. 1033, 480 N.W.2d 156 (1992).

Shortly after the jail door incident of November 23, 1985, Bernhardt made two followup visits to her family doctor, Dr. Alan Johnson of Gering, Nebraska. On November 27, 1985, Bernhardt related to Dr. Johnson that she had gotten her "left hand slammed in the jail bars." His notes indicate that x rays revealed undisplaced minimal tuft fractures to the third and fourth fingers of the left hand. The appellant related that the ends of her fingers were "still fairly numb." On December 5, 1985, Dr. Johnson found Bernhardt's fingers were "getting better."

Neither the emergency room report nor any of Dr. Johnson's records reflect that the appellant complained of any pain in her left wrist. The emergency room report and Dr. Johnson's records reflect that Bernhardt complained only about the injury to her two fingers which had been involved in the jail door incident.

The next time Bernhardt complained of or sought treatment for her left hand was on February 3, 1987, approximately 14 months following the jail door incident. She made one visit to Dr. Johnson. His office notes show her complaint to be "[left] hand - fingers going numb- Sore" at bedtime or during the night. Dr. Johnson's notes indicate, "I think more related to old accident (car) [and history] of carpal tunnel release bilat[.] than finger smash of 11/85." Dr. Johnson told Bernhardt that it was either arthritis or recurring carpal tunnel syndrome. He ordered

medication and wanted to check Bernhardt in 3 weeks, possibly to make an orthopedic referral. There is nothing in the record to indicate that Bernhardt received any followup treatment, visited Dr. Johnson again, or was examined upon a referral until an additional 18 months had passed.

In the summer of 1988, after a series of referrals, Bernhardt was examined by a neurosurgeon, Dr. Ernest Beehler, who saw her only once, on July 15, 1988. This was almost 20 months after the jail door incident involving the two fingers of her left hand. She complained of pain in the left thumb, wrist, and forearm. The history the appellant related to Dr. Beehler was that "a jail door closed on the fingers of her left hand and since that time she's had pain at the base of the left thumb and into the wrist and . . . up the forearm." He considered these symptoms to be unusual and suggestive of carpal tunnel syndrome. He testified that he originally thought that these symptoms began right after the jail door injury. When he learned at his deposition that there had been a substantially longer period of time than he originally had thought between the jail door injury and the complaints for which he was examining her, Dr. Beehler said he would have difficulty correlating the two: "The impression I was getting was that this other came on immediately after the accident," so "if in truth there was a long time in there, then I would say it probably wasn't related to the finger incident."

Dr. Beehler referred Bernhardt to the Fort Collins Orthopaedic Associates in Colorado, where she was initially examined on July 25, 1988, by Dr. Dale Kaiser. He wrote that Bernhardt's symptoms indicated tendinitis or carpal tunnel syndrome. After two examinations, Dr. Kaiser referred the appellant to his partner, Dr. Kenneth Duncan.

On September 6, 1988, Bernhardt complained to Dr. Duncan of pain and tenderness in her left wrist joint, in the tendons on the thumb side of the wrist, and over one of the nerves in the wrist which go up to the elbow. Dr. Duncan was under the impression, because of the history Bernhardt had related, that her *hand and/or wrist* had been slammed in the jail door and that she had suffered wrist pain following the injury. He finally diagnosed distal radioulnar joint degenerative arthritis and

midcarpal instability, a ligamentous laxity between two rows of wrist bones. Bernhardt had had some symptoms of carpal tunnel syndrome during her treatment, but it was not a major complaint, and he did not specifically treat her for carpal tunnel syndrome.

Dr. Duncan performed a partial left wrist fusion in January 1989 and a complete wrist fusion in November 1989, both for midcarpal instability.

The only expert opinion supporting the appellant's assertion that the jail door incident of November 23, 1985, caused her disability is that of Dr. Duncan. Under all the circumstances, a fact finder might well find that Dr. Duncan's opinion was less than sufficient to support Bernhardt's claim regarding the cause of her disability and that the doctor's opinion was based upon incorrect and incomplete information.

Dr. Duncan initially testified in regard to the medical cause of Bernhardt's problem that "[b]y history, it appears to be her hand getting caught in the jail door." He stated that the condition directly and medically followed the injury suffered in the jail door incident. Upon cross-examination, Dr. Duncan admitted that he had been under the assumption that Bernhardt had had an actual injury to the hand and the wrist in the jail door incident. He did not know that Dr. Johnson had been of the opinion that the condition was not caused by the jail door incident. Apparently, Dr. Duncan saw Dr. Johnson's office notes for the first time at the taking of Dr. Duncan's deposition. Dr. Duncan mistakenly thought that the office visit of February 3, 1987, was approximately 10 weeks following the accident when in reality it was approximately 14 months. However, even based upon the assumption that only 10 weeks had lapsed between the accident and the examination by Dr. Johnson, Dr. Duncan stated, "The information from her family physician that shows there were no wrist symptoms during the 10 weeks following the finger injury makes me question whether or not there is a direct relationship between that injury and the wrist symptoms that I saw her for." Dr. Duncan lacked certainty as to whether her symptoms were due to the jail door incident. He wondered why the "first time we see wrist complaints is two years [actually 14 months] later," when his understanding of the

history was that she had wrist pain from the time of the jail door injury.

Dr. Duncan stated that appellant's midcarpal instability could be latent. Upon redirect examination, Dr. Duncan again opined that based upon the history he had obtained, which was that appellant had suffered a "crush-type injury to the hand and wrist," the injury Bernhardt received in the jail door incident caused the appellant's current condition.

When asked to explain how the wrist could be injured when the fingers were caught in the door, Dr. Duncan said, "If the fingers are trapped and you wind up pulling on them, trying to get them out, you certainly can stretch the ligaments in the wrist, causing inflammation in that area, or if you pull hard enough, you certainly could actually tear the ligaments." It is important to note that nowhere in any medical reports, or in the appellant's written explanation of the incident prepared for her employer shortly after the incident, is there any evidence that appellant pulled at her hand to free it from the door. The record does not reflect that Dr. Duncan had any such history when he rendered his opinion at his deposition, which was taken following a single-judge hearing at which the appellant testified. It appears that the first evidence relating to Bernhardt pulling her hand free from the jail door is the appellant's own testimony before the three-judge panel of the Workers' Compensation Court. That took place approximately 1 week after Dr. Duncan's deposition was taken.

The sufficiency of the expert's opinion is judged in the context of the expert's entire statement. *Morton v. Hunt Transp., ante* p. 63, 480 N.W.2d 217 (1992). Moreover, the value of an opinion of an expert is no stronger than the facts upon which it is based. *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 308 N.W.2d 734 (1981); *Liberty v. Colonial Acres Nsg. Home, ante* p. 189, 481 N.W.2d 189 (1992). When the entire evidential record is considered, it cannot be said that the Workers' Compensation Court was clearly wrong in rejecting Dr. Duncan's conclusions regarding causation of Bernhardt's current disability.

The Workers' Compensation Court, the trier of fact herein, concluded that there was insufficient evidence to prove a

compensable causal connection between Bernhardt's work and the condition for which she requests compensation. After reviewing the record, we cannot say that the compensation court was clearly wrong.

AFFIRMED.