CLINTON D. PEARSON, APPELLEE, V. LINCOLN TELEPHONE
COMPANY, APPELLANT.

513 N.W.2d 361

Filed March 15, 1994.   No. A-93-656.

J. Taylor Greer, of Woods & Aitken, for appellant.

Robert R. Moodie, of Friedman Law Offices, for appellee.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

SIEVERS, Chief Judge.

In this case, we address the scope of review by a three-judge panel of the Workers' Compensation Court (review panel) after trial of the case to a single judge of the Workers' Compensation Court (trial judge or trial court). Rehearings before three-judge

panels were eliminated in 1992 Neb. Laws, L.B. 360, in favor of a trial on the record to a single judge followed by review of that record by a three-judge panel. See Neb. Rev. Stat. § 48-179 (Cum. Supp. 1992).

The trial judge dismissed the petition of Clinton D. Pearson, who claimed hearing loss by "accident arising out of and in the course of" his employment with Lincoln Telephone Company. The review panel vacated the order of dismissal, and "the cause [was] remanded to a trial judge for further determination." Lincoln Telephone appeals the vacation of the dismissal and the remand to the trial court. We reverse.

## JURISDICTION

Pearson argues that the order of remand is not a final, appealable order, as it is interlocutory. Lincoln Telephone counters by asserting that the order of the review panel affects a substantial right in a special proceeding and is therefore final for purposes of appeal. Even if jurisdiction is not raised by the parties, an appellate court is dutybound to examine jurisdiction. *Zoet v. Zoet*, 2 Neb. App. 71, 507 N.W.2d 42 (1993).

The Nebraska Supreme Court, in *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993), points out that it is an erroneous assumption that an order is not final until it resolves all of the substantive issues between the parties. Pearson takes this erroneous position when he argues that the case must be tried upon remand before there is a final, appealable order. *Jarrett* holds that there are three types of final orders to be reviewed upon appeal: (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.

We believe that a workers' compensation case remanded by a review panel falls in the second category: an order affecting a substantial right made during a special proceeding. *Jarrett* provides the necessary definition:

A "special proceeding" occurs when the law has conferred

a right and has authorized an application to the court to enforce that right. *Sullivan v. Storz*, 156 Neb. 177, 55 N.W.2d 499 (1952). Further, this court has construed the phrase "special proceeding" to mean every civil statutory remedy which is not encompassed in chapter 25 of the Nebraska Revised Statutes.

244 Neb. at 313-14, 506 N.W.2d at 685.

*Jarrett* further points out that the inquiry does not end with the determination that an order arose during a special proceeding; a substantial right still must be affected. A workers' compensation action, as provided for in chapter 48 of the Nebraska Revised Statutes, is a special proceeding. *Jarrett* held that an order which vacated a dismissal destroyed the defense which was previously available to the appealing party, and thus the order affected a substantial right.

The same is true here, as the order of the review panel destroyed the dismissal Lincoln Telephone had obtained from the trial judge, which obviously was to its advantage. Accordingly, a substantial right has been affected. We hold that an order of a workers' compensation review panel which vacates a trial judge's dismissal and remands the case for trial is a final, appealable order.

## FACTUAL BACKGROUND

Pearson began working for Lincoln Telephone in 1972 in the construction department. He was part of a crew involved in the burying of telephone cable, which consists of digging a trench, laying cable, and covering the trench. A three-person crew does the work: one operates the trencher, one operates the truck carrying the reels of cable, and one walks behind the trencher and feeds the cable through it. Pearson worked in the construction department laying cable for approximately 5 or 6 years, and then went to the combination services department, where he worked until 1986. He then returned to the construction department as a group leader of a three-person cable-laying crew.

The trencher is apparently a noisy machine. The testimony from Pearson was that it is so loud that the operator, who sits atop the machine, and the person working behind it cannot

communicate except by hand signals or yelling into each other's faces. Lincoln Telephone offered evidence that the noise level 10 feet from the machine when the digger was operating was 95 decibels and that under the Occupational Safety and Health Act standards, a worker could be exposed to such noise for 4 hours without violation. The worker who operated the machine from a position on top of it would be exposed to 102 decibels, but Pearson's position was most often on the ground behind the machine or occasionally with the cable reel truck.

In September 1991, Pearson went to Dr. Tim Fischer for a physical examination in order to get his commercial driver's license. Pearson could not pass this examination unless outfitted with a hearing aid, because he was found to have hearing loss. Prior to this diagnosis, Pearson felt he was noticing some problems with his hearing, such as missing parts of conversations. He testified it had been 3 or 4 years since he first noticed a problem with his hearing, and he thought it was gradually getting worse. Pearson also testified with respect to other nonwork noise exposures. He served in the Marine Corps in Vietnam and was exposed to some artillery fire, although he was not part of a guncrew. In addition, he testified he also does some hunting.

An audiologist reported that Pearson had a sensorineural hearing loss, commonly called nerve deafness. Dr. Trent Quinlan, an otolaryngologist, opined that Pearson's test revealed a speech reception threshold in the right ear of 45 decibels with an 84-percent speech discrimination score, and in the left ear, a speech reception threshold of 40 decibels with an 80-percent speech discrimination score, which, according to Dr. Quinlan, would place Pearson "at the margin of comfortable listening or below in typical social situations." Using the American Medical Association's formula for determination of hearing handicap, Dr. Quinlan stated that Pearson's handicap was 34.9 percent, which did not take into account his speech discrimination scores.

## TRIAL COURT ORDER

The trial court dismissed the petition, concluding that the medical evidence "does not provide the Court with sufficient

specificity as to the amount of hearing loss, if any, plaintiff sustained as a result of his exposure to noise in the employment of the defendant and his petition must therefore be dismissed."

## REVIEW PANEL DECISION

We conclude that Judge Vrana was clearly wrong in light of the evidence he otherwise cites in the order of dismissal including the percentage loss of hearing suffered by plaintiff and the doctor's statement that plaintiff's "significant noise exposure for over six years has played a significant role in exacerbating these changes."

With this comment, the review panel vacated the trial judge's dismissal and remanded the matter to a "trial judge" for "further determination."

## ASSIGNMENTS OF ERROR

First, Lincoln Telephone claims that the review panel of the compensation court erred in failing to conclude that the hearing loss injury was not compensable because there was no identifiable event wherein Pearson's symptoms manifested themselves and within a reasonable period of time thereafter required medical attention and prevented Pearson from continuing his work. Second, Lincoln Telephone maintains that there was ample evidence supporting the trial judge's order of dismissal and that therefore it cannot be found to be "clearly wrong" by the review panel.

## STANDARD OF REVIEW

This case involves the appellate review of an order of a review panel, and determination of the proper standard of review is central to our decision. Pearson argues that we must give him the benefit of all favorable inferences which can be drawn from the evidence, which would entitle him to affirmance of the review panel's decision. Pearson relies upon Neb. Rev. Stat. § 48-185 (Cum. Supp. 1992), which provides: "The judgment made by the compensation court after review shall have the same force and effect as a jury verdict in a civil case." It is well established that findings of fact by a jury are not overturned on appellate review unless clearly wrong. *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990).

Pearson acknowledges that there is no reported decision in Nebraska holding that hearing loss from repetitive exposure to noise in the workplace is compensable under the Workers' Compensation Act, either as an accident or as an occupational disease. However, we assume the basic compensability of accidental hearing loss, as Neb. Rev. Stat. § 48-121 (Reissue 1988) provides for compensation for "loss of hearing." We do not address the specific issue of loss by repetitive exposure because we decide the case on the standard of review.

We turn to § 48-185, which speaks of the power of the appellate court as follows:

> A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the compensation court do not support the order or award.

This language was formerly found in § 48-185 (Reissue 1988) when rehearings on the record were utilized prior to the passage of L.B. 360. The Supreme Court spoke of this statutory language in its opinion in *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 168-69, 511 N.W.2d 762, 767 (1994):

> The case law on this point is equally well settled. In *Foreman v. State*, 240 Neb. 716, 720, 483 N.W.2d 752, 755 (1992), quoting from *Roan Eagle v. State*, 237 Neb. 961, 468 N.W.2d 382 (1991), and *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), we stated: " ' " 'Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. [Citations omitted.] In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. [Citations omitted.] Factual determinations by the Workers' Compensation Court will not be

set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing . . . § 48-185 precludes [an appellate court's] substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. [Citations omitted.] As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.' " ' "

The decision in *Aken* was in an appeal involving a rehearing, not a review panel as we have here. Thus, the question we must answer is whether the findings of fact to which deference is given on appellate review are those of the trial judge or those of the review panel. The obvious ancillary question is whether the appellate review has now been "shuffled down" one level. In other words, Does the review panel now examine the trial judge's decision under the same standard of review which the Supreme Court and the Court of Appeals employed prior to the change brought about by L.B. 360? We think the answer is in the affirmative, and consequently, the review panel is bound to employ the same standard of review of the trial court's decisions as applied by the Supreme Court and the Court of Appeals and as delineated above in *Aken*.

In reaching this conclusion, we must deal with the language of § 48-185 (Cum. Supp. 1992), which addresses appellate review by the Supreme Court or Court of Appeals and says that "[t]he judgment made by the compensation court *after review* shall have the same force and effect as a jury verdict in a civil case." (Emphasis supplied.) Prior to the amendment, the language was: "The findings of fact made by the compensation court *after rehearing* shall have the same force and effect as a jury verdict in a civil case." (Emphasis supplied.) § 48-185 (Reissue 1988). Thus, it can be seen that this portion of the statute was amended to reflect the change from three-judge rehearings to three-judge reviews. The obvious significance of according judgments of the Workers' Compensation Court status equivalent to a jury verdict is that findings of fact by juries are not to be disturbed upon appeal unless clearly wrong.

See *Chadron Energy Corp. v. First Nat. Bank, supra.*

With that concept in mind, we quote the language of § 48-179, as amended by L.B. 360, which speaks of the review panel and its powers:

> No new evidence may be introduced at such review hearing. The review panel may write an opinion, but need not do so, and may make its decision by a brief summary order. The compensation court may reverse or modify the findings, order, award, or judgment of the original hearing *only* on the grounds that the judge *was clearly wrong on the evidence* or the decision was contrary to law.

(Emphasis supplied.)

There is an ambiguity between § 48-179, limiting the review panel to an on-the-record review with reversal only when the trial judge is clearly wrong—which is the standard for appellate review of jury verdicts—and the language of § 48-185, which gives the review panel's decision the status of a jury verdict. However, the review panel is not hearing or seeing witnesses and is not in the position of a fact finder as is the trial judge. It seems logical that the deference which is normally accorded to the fact finder can be accorded only to the trial judge or to the review panel, but not both. Therefore, we must construe the statutes.

■ We recognize that in construing statutes, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute, it being our duty to discover, if possible, the Legislature's intent from the language of the statute itself. See *In re Interest of M.J.B.*, 242 Neb. 671, 496 N.W.2d 495 (1993). However, in our view, the Legislature has created an ambiguity between §§ 48-179 and 48-185, as detailed above. The law is that when statutory language is ambiguous and must be construed, recourse should be had to the legislative history for the purpose of discovering the lawmakers' intent. *Coleman v. Chadron State College*, 237 Neb. 491, 466 N.W.2d 526 (1991).

Therefore, we examine the legislative history of L.B. 360. The legislation began as a proposal to eliminate rehearings by having on the record trials to a single judge of the compensation court, followed by an appeal to this court. However, in the legislative process, the bill was amended and enacted to provide

for trial to a single judge with an appeal to a three-judge review panel. That the appeal to the review panel was intended to be of limited scope is apparent from the floor debate. We note that Senator Coordsen was the introducer of the legislation. We quote from the floor debate:

SENATOR KRISTENSEN: . . . And this is going to be primarily for the record and so we are clear. On page 16, Senator Coordsen, of your amendment 3382, we talk about the standard of review by the review panel I guess is what we call it, the three-judge review panel, and we talk about that the standard of review there is only on the grounds that the judge was clearly wrong on the evidence or the decision was contrary to law. That standard would be an error on the record review and not a de novo on the record review. Is that correct?

SENATOR COORDSEN: That is correct.

SENATOR KRISTENSEN: Thank you. And that's probably not important to most. Everybody is standing around this morning, but when we go to do that later and when the Supreme Court or the Court of Appeals takes a look at that to make sure our clear intent was that that was to be a standard of error on the record and not another de novo review at that point in time. Thank you for those answers. I would support the Coordsen amendment. I certainly think that this places it in the procedural pattern and it is consistent with the Court of Appeals and consistent with the review of the Supreme Court to do that.

Floor Debate, 92d Leg., 2d Sess. 11,324-25 (March 25, 1992).

■ Additionally, we believe traditional notions of appellate review compel the result we reach. An appellate court, reviewing the judgment of a district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Bell Fed. Credit Union v. Christianson*, 244 Neb. 267, 505 N.W.2d 710 (1993). This court, in *White v. Christian Homes, Inc.*, 2 Neb. App. 213, 508 N.W.2d 309 (1993), held that pursuant to § 48-185, an appellate court will not set aside, modify, or reverse a workers' compensation decision if there is

sufficient competent evidence in the record to warrant the order, award, or judgment. We believe that under the new procedure enacted by L.B. 360, the review panel should not substitute its view of the facts for that of the trial court, and thus if there is competent evidence in the record before the trial court to support its decision, then the review panel should affirm the decision, award, or order of the trial court. This rule, as well as those quoted from *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994), is in respect to findings of fact by the compensation court, and as a result of L.B. 360, it is now only the trial judge who makes the findings of fact. Thus, when this standard is applied, the single judge of the compensation court is the factfinding trial court and the review panel is performing the first level of appellate review.

■ Consequently, the review panel cannot go beyond its statutory mandate for review, which is limited to reversing or modifying "only on the grounds that the judge was clearly wrong on the evidence or the decision was contrary to law." § 48-179. If the review panel goes beyond this standard, then it has "acted without or in excess of its powers," one of the four grounds for reversal by this court found in § 48-185 (Cum. Supp. 1992).

With that said, the issue in the case at hand may be stated as follows: Was the trial judge "clearly wrong on the evidence" when he found that the "medical evidence does not provide the Court with sufficient specificity as to the amount of hearing loss, if any, plaintiff sustained as a result of his exposure to noise in the employment of the defendant and his petition must therefore be dismissed"? To answer the question requires that we examine Pearson's evidence of causation, viewing it in the light most favorable to Lincoln Telephone, the successful party at trial, as the review panel should also have done.

### EVIDENCE OF CAUSATION

On the matter of causation of Pearson's hearing loss, Dr. Quinlan authored a letter of February 17, 1992, which stated:

Noise induced hearing loss is accumulative throughout a person's lifetime. Noise that you are exposed to as a child, during hunting as a young adult, or during military

experience, all has a detrimental affect [sic] on the ear, which may not present itself as a true hearing loss until one becomes older.

I, therefore, would say that some of Mr. Pearson's hearing loss may be related to previous noise exposure. However, his history of significant noise exposure for over six years has played a significant role in exacerbating these changes.

We believe that the 6 years referred to in Dr. Quinlan's letter is the last 6 years that Pearson worked on the cable-laying job prior to his physical in September 1991 when his hearing loss was diagnosed. There is also evidence that during this 6-year timeframe, Pearson's crew would trim trees during the winter and use a chipper to grind up the branches and shoot them into a dump truck. During the time he had these noise exposures on the job, he was also having off-the-job noise exposure from his use of firearms. Pearson was off work for 29 weeks in 1988, 16 weeks of which time off was due to an accidental gunshot wound to the stomach.

Lincoln Telephone had Pearson examined by Dr. Michael Rapp, also an otolaryngologist. He indicated that Pearson has high-frequency sensorineural hearing loss, which can be compatible with noise exposure, a family history of hearing loss (which the doctor described as benign in Pearson's case), or from taking "aminoglycocide [sic] antibiotics." Dr. Rapp speculates the gunshot wound could have required the administration of such antibiotics, which apparently can be ototoxic.

Dr. Rapp's letter opinion in evidence in this case quotes from the audiogram data, and he points out what he considers to be inconsistencies with respect to the readings on speech reception threshold and pure tone reception. The letter states: "I cannot make a definitive statement that Mr. Pearson is exaggerating his hearing loss. However, every textbook of audiometry would state that discrepancy between the speech reception threshold and pure tone reception is one of the first things that you note when someone is exaggerating a hearing loss." Dr. Rapp questioned Pearson's credibility and suggested that Pearson was magnifying the extent of his hearing difficulties.

Nonetheless, the doctor concluded that Pearson had some hearing loss at least in the high frequencies, which *"may be related* to noise exposure as well as . . . aminoglycocide [sic] antibiotics. Certainly, he has had military service as well as being a hunter and being exposed to noise on the job."

When we evaluate the import of the opinions expressed in the letters from Drs. Quinlan and Rapp, we are bound by several key principles. The review panel is also bound by these principles. The first of these is that unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish a causal relationship between the incident and the injury or disability. *Bernhardt v. County of Scotts Bluff,* 240 Neb. 423, 482 N.W.2d 262 (1992).

In *Castro v. Gillette Group, Inc.*, 239 Neb. 895, 897, 479 N.W.2d 460, 463 (1992), the court set forth the rule with respect to the sufficiency of a medical expert's opinion: "A medical expert's opinion is not sufficient as a matter of law to support a workers' compensation claim unless it is based on a reasonable degree of medical certainty or a reasonable probability." Clearly, neither physician in this case offered his opinion using the language "reasonable medical certainty."

In *Bernhardt v. County of Scotts Bluff*, 240 Neb. at 428, 482 N.W.2d at 266, the court also stated:

> In reviewing expert medical testimony, we are reminded that expert medical testimony based upon "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court. . . . Moreover, triers of fact are not required to take an expert's opinion as binding upon them . . . and a fact finder or trier of fact may accept or reject an opinion from an expert witness . . . .

(Citations omitted.)

The evidence from Dr. Rapp with respect to a relationship between Pearson's work and his hearing loss is that it "may be related to noise exposure." Dr. Quinlan's letter says that Pearson's "history of significant noise exposure for over six years has played a significant role in exacerbating these changes." It is clear under *Bernhardt* that the trial judge was free to reject the opinion of Dr. Quinlan, whatever it might

prove, and rely upon the opinion of Dr. Rapp, which was that the connection between Pearson's noise exposure on the job and his hearing loss was only to the extent of "may be related," which is insufficient proof as a matter of law. Thus, under the standard of review for the review panel, it cannot be said that the trial judge was "clearly wrong on the evidence or that the decision was contrary to law." The fundamental reason is that the fact finder in a workers' compensation case is now the single trial judge and not the rehearing panel. Thus, if the language of § 48-179 that the review panel reverses or modifies only when the judge at the original hearing was "clearly wrong on the evidence" is to have meaning, the review panel must apply the same standard of review that bound this court on an appeal of a rehearing award under the previous procedure. See *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994).

## CONCLUSION

The review panel's order of reversal is premised solely upon Dr. Quinlan's opinion, which the trial judge was not bound to accept. The review panel ignored Dr. Rapp's opinion, which is that Pearson was likely exaggerating the degree of his hearing loss and that in any event, the cause of that loss could be from a number of factors. When Dr. Rapp used the language "may be related" with reference to noise exposure, he was placing the causal connection in the realm of speculation and conjecture. There was sufficient evidence in the record to support the trial court's order of dismissal in favor of Lincoln Telephone. Accordingly, the review panel acted in excess of its powers when it based a reversal and a remand upon an expert's opinion which was before the trial judge, but which was obviously rejected by him in favor of an opposing opinion which held that the necessary causal link was not present. For these reasons, we reverse the review panel's order of reversal and remand, and reinstate the order of dismissal entered by the trial court.

REVERSED.