IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JAKUB V. MENARDS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMIE JAKUB, APPELLEE,

V.

MENARDS, APPELLANT.

Filed July 24, 2018.    No. A-17-831.

Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed.

Paul F. Prentiss and Kelsey J. Paumer, of Prentiss Grant, L.L.C., for appellant.

Ryan C. Holsten, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Menards appeals from the Nebraska Workers' Compensation Court's July 2017 order finding Jamie Jakub to be an odd-lot employee entitled to permanent total benefits under the Nebraska Workers' Compensation Act. For the reasons set forth herein, we affirm.

## FACTUAL BACKGROUND

In May 2012, Jakub was employed by Menards as a contractor sales manager and suffered an accident and injuries to his lower back while lifting lumber in the course and scope of this employment. Jakub filed a petition in the Nebraska Workers' Compensation Court in February 2015 seeking benefits related to the May 2012 work accident and injuries, and Menards filed an answer denying the extent of disability claimed.

- 1 -

The compensation court held a trial on the petition in September 2016 and held an additional hearing on the petition in January 2017. At the trial and subsequent hearing, the court heard testimony from Jakub and received into evidence various exhibits, including a trial stipulation, medical records, functional capacity evaluations, loss of earning and progress reports, and surveillance records.

During trial, Jakub testified that prior to his position at Menards, he was in the United States Air Force and National Guard; that he had injuries during this service including to his shoulders, back, ankles, and hearing; and that he is entitled to VA benefits as a result of this service and injuries. Before his May 2012 work accident, Jakub testified that he was always physically capable of performing all of his employment duties. Jakub is married and lives in Columbus, Nebraska. Jakub's wife currently has health issues which require their traveling to Omaha two or three times a week for her doctor's appointments.

After Jakub's injury, he was evaluated and treated by a variety of medical professionals. Initially, Jakub was evaluated by Dr. Edward Disco and, eventually, Jakub was referred to Dr. Geoffrey McCullen. Dr. McCullen noted Jakub's diagnostic test results showed annular tears at various lumbar levels but determined Jakub was not a surgical candidate. Thereafter, Dr. McCullen referred Jakub to Dr. John McClellan for a second opinion.

Dr. McClellan ultimately performed L5-S1 fusion surgery on Jakub in April 2013. Immediately after the surgery, Jakub's symptoms temporarily improved, but soon thereafter, Jakub reported lumbar back pain from the surgery, pain radiating in his left leg, and interior thigh pain that developed post-surgery. Jakub reported that he continues to have pain; however, he does not take pain medication beyond occasional ibuprofen because of potential adverse effects from their use.

Following Jakub's May 2012 injury, Jakub returned to work at Menards, but his schedule was changed to part time and his position was moved to the electrical department. Menards instructed Jakub they would accommodate his lifting and work restrictions within his position. At first, Jakub was allowed to shift his schedule depending on his condition and abilities, but his managers soon began to require Jakub to work specific hours and times. Although Jakub was informed that he could call upon managers to aid him whenever he was required by his new position to do something beyond his lifting restrictions, Jakub reported that he was often the lone employee in the department and such help was typically unreliable in relation to timely assisting customers. Jakub testified he felt compelled to assist customers and perform jobs that went beyond his restrictions. Jakub reported repeated aggravations of his injuries from his work in the electrical department and eventually left Menards due to his inability to continue working without further aggravation of his injuries.

After ceasing employment with Menards, Jakub began a remodeling project in his backyard. In his testimony, Jakub provided that, while performing this work caused him additional pain and often resulted in him having to recover for days, he performed certain tasks associated with the project because Dr. McClellan advised him to try to stay physically active. These tasks included a backyard paving project, taking out several existing planting beds, and building and installing raised planter beds. Jakub testified that these projects remained unfinished at the time of the hearings. During the course of the projects in 2015 and 2016, Jakub testified that his children and wife helped extensively with many aspects including the lifting and moving tasks, that he

operated a bobcat to level the ground, and that he rented a wet saw on four or five occasions to cut stone. A surveillance video offered into evidence demonstrated Jakub, at various times, bending over and lifting the back of a lawnmower, squatting, kneeling, wheeling a pressure washer, and moving and using the wet saws to cut stone. The surveillance video additionally showed Jakub walking with a limp, not moving at a consistent pace, and performing his tasks very slowly. Jakub testified that he performed this work in spurts for short periods of time in an effort to not aggravate his injuries more than necessary, that he would only be able to perform these tasks when his condition allowed, that at times he would take breaks from the tasks to lie down to preserve his back, that the jobs took longer than usual because he had to work at a slower pace, that he would have to change body positions in order to complete the cutting jobs, and that he rented the wet saw for partial days because a full day would be too much on his injuries.

Jakub had three functional capacity evaluations to determine his permanent physical restrictions stemming from his May 2012 accident and injuries. Jakub's first functional capacity evaluation was performed in May 2014 by physical therapist Steven Line. At the testing, Jakub completed only the history and physical assessment portion and Line terminated the testing portion due to "client's extreme reported pain levels," "hyperventilating due to reported pain in his lower back," elevated heart rate after calf raises, and "a measured location of swelling on the lumbar spine." Line had Jakub lie down to control his breath and heart rate and allow the pain to subside. When Jakub left the test and walked to his vehicle, Line observed "an extreme antalgic gait pattern [and] very slow[,] guarded motions and transfers into his car."

Jakub completed the second functional capacity evaluation, which was performed by physical therapist Jake DeNell in August 2015. DeNell found Jakub to have "demonstrated acceptable levels of physical effort, but the reliability of [Jakub's] subjective reports of pain and disability indicate the results listed in this report are only a fair representation of the client's functional ability." DeNell found Jakub's medical impairments resulted in the following functional abilities:

> The client is a strong individual. His lifting is limited to only 20 lbs. on an occasional basis between waist and shoulder height and 10 lbs. frequently. Because of both limitations of squatting and forward bending he is unable to lift from the floor.
>
> The client can push and pull with 25 lbs. of force on an occasional basis.
>
> Any one activity done repeatedly causes some exacerbation of Mr. Jakub's pain.
>
> For this reason, the client is best suited for work at table height involving the physical demand low level work including squatting, bending, stooping, and crouching should be limited to an occasional basis through partial range of motion.
>
> Static postures including sitting and standing should be limited to less than an hour at a time, but can be repeated several times throughout the work day. . . .
>
> The client can reach forward on a constant basis and overhead reaching on an occasional basis. . . .
>
> Twisting is limited through partial range of motion. Kneeling, crawling, stairclimbing, ascending and descending ladders are only on an occasional basis.
>
> It is this evaluator's opinion that this client can only work on a part time basis; 4 hours in a day. He has multiple attempts at returning to work unsuccessfully. Because of

his limitations in sitting, standing, and tolerance to any one activity, 4 hours per day is his maximum safe working ability.

DeNell concluded the recommendation by stating, "It is important that this client continue to be physically active walking on a regular basis, continuing with his back rehab exercises on a daily basis, live a lifestyle that limits his disability by being active, using proper hydration, and [being] physically fit."

Jakub's third functional capacity evaluation was performed in October 2015 by physical therapist Neal Wachholtz who determined the results to be invalid. Wachholtz specifically found Jakub to be "generally cooperative during the examination but demonstrated findings of inconsistent and submaximal effort" and that Jakub "appears capable of safely functioning at higher levels than he demonstrated during this exam." Wachholtz opined that Jakub could perform medium work "at a minimum."

Dr. Chris Cornett, as Menards' expert, performed an independent medical examination of Jakub's injuries. After reviewing medical records including two of the functional capacity evaluations and examining Jakub, Dr. Cornett found that it appeared Jakub had a back injury on the date of the incident, reached maximum medical improvement, and continues to have 5-percent permanent impairment. He explained that no further treatment was necessary except personal exercise and fitness to the best of Jakub's ability, that only as-needed over-the-counter medications were recommended, and that no further surgeries, interventional treatment, or narcotic pain medication were recommended. In his report, Dr. Cornett found no anatomic diagnosis for Jakub's complaints and opined that the current complaints could be related to Jakub's surgery rather than the original injury. Noting his 5-percent whole body impairment finding, Dr. Cornett opined that Jakub is restricted to work at a medium physical demand level.

Dr. McClellan, who performed the surgery and was Jakub's treating physician, found Jakub had reached maximum medical improvement, that Jakub should not remain on long term narcotics, that Jakub had unusual thigh pain developed postsurgery which physicians were unable to sort out, and that Dr. Cornett should recalculate his opinion of 5-percent permanent impairment due to a verifiable radicular component with the positive EMG. In a deposition on this matter, Dr. McClellan noted Jakub had leg pain which was relieved by his surgery but had developed left side thigh pain after the surgery. In response to questioning, Dr. McClellan acknowledged that Jakub's limitations were based upon his subjective complaints. As to Dr. Cornett's report and restrictions therein, Dr. McClellan opined that Dr. Cornett did not address Jakub's thigh pain. Dr. McClellan adopted the functional capacity evaluation of DeNell which indicated Jakub could only work part time in the light physical demand level. However, Dr. McClellan further found Jakub will "have trouble even performing at the light duty level on a day after day basis" and he will "have good and bad days that will limit his ability to work on a consistent basis."

Jane Yaffe-Rowell was appointed by the court as the vocational rehabilitation counselor to address Jakub's loss of earning capacity due to his May 2012 injuries. Yaffe-Rowell opined that when considering Dr. Cornett's opinions, Jakub's loss of earning capacity is approximately 40 percent, but that when considering Dr. McClellan's opinions, Jakub's loss of earning capacity is approximately 75 percent. Yaffe-Rowell further provided that if considering Dr. McClellan's

finding that Jakub's condition on a given day could affect his ability to work on a consistent basis, Jakub would meet the definition of odd-lot employee in that

> it would appear that Mr. Jakub would have difficulty maintaining even part-time, light duty employment as he would be unable to regularly adhere to a set schedule. Even if he were able to independently do some consulting with his experience as a Contractor or with the Financial Planning he has done with Primerica, he would still need to be able to maintain a schedule, albeit he would have a greater degree of flexibility than working for someone else. Regardless, it is not likely that either of those possible options would lead to a "suitable" level of employment.

Jack Greene, Jakub's rebuttal vocational expert, indicated that, using Dr. Cornett's opinions, Jakub's loss of earning power was 80 percent. If, however, Dr. McClellan's opinions were used, Jakub's loss of earning power was total in that Jakub's "inconsistent availability for performing employment would prevent him from either securing or maintaining any competitive position of employment within his regional labor market."

Patricia Conway, Menard's rebuttal vocational expert, opined that using Dr. Cornett's opinions, Jakub's loss of earning power was 40 percent while, if using Dr. McClellan's opinions, Jakub's loss of earning power was 75 percent. Conway did not address Dr. McClellan's opinion that Jakub would "have trouble even performing at the light duty level on a day after day basis."

The court entered its order in July 2017. After recounting Jakub's direct testimony and the information contained within the exhibits, the court stated:

> With regard to restrictions and limitations [Jakub] is allowed to work, the Court adopts the restrictions of Dr. McClellan, and further finds that [Jakub] cannot work on a consistent basis. It is also important to note Dr. McClellan's statement on page 36 of Exhibit 29 that . . . neither he, the physical therapist nor Dr. Cornett would hire [Jakub] because of his pain and not knowing "whether it's going to be a good day or a bad day."

The court ultimately found Jakub "is an odd lot employee" and explained "[n]o one would hire [Jakub] because, at best, he could only work part time, and even then on an inconsistent basis."

## ASSIGNMENTS OF ERROR

Menards assigns, restated, that the trial court erred in (1) failing to provide a reasoned, meaningful decision when it failed to address Jakub's credibility; (2) failing to provide a reasoned, meaningful decision when it adopted Dr. McClellan's restrictions; and (3) finding that Jakub is an odd-lot employee.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). In determining whether to affirm, modify,

reverse, or set aside a judgment of the Workers' Compensation Court, an appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong. See, *id.*; *Cervantes v. Omaha Steel Castings Co.*, 20 Neb. App. 695, 831 N.W.2d 709 (2013). Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *VanKirk v. Central Community College*, 285 Neb. 231, 826 N.W.2d 277 (2013).

ANALYSIS

JAKUB'S CREDIBILITY

Menards first assigns as error that the compensation court failed to provide a reasoned, meaningful decision when it failed to address Jakub's credibility. Specifically, Menards claims the compensation court was required to provide a clear and unambiguous statement with regard to Jakub's credibility in order to provide an opportunity for meaningful appellate review. This, it argues, is necessary because not only is the weight of Jakub's direct testimony at issue but so is the information he supplied to the treating and expert medical personnel and vocational experts in that their analyses were based, at least in part, upon Jakub's reporting. See *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014) (explaining that, unless its nature and effect are plainly apparent, injury is subjective condition requiring expert opinion to establish causal relationship between employment and injury or disability). See, also, *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992) (providing that value of opinion of expert is no stronger than facts upon which it is based).

In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Pearson v. Archer-Daniels-Midland Milling Co.,* 285 Neb. 568, 828 N.W.2d 154 (2013). Moreover, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

Workers' Comp. Ct. R. of Proc. 11(A) (2018) provides that the compensation court "shall provide the basis for a meaningful appellate review" and that the judge "shall specify the evidence upon which the judge relies." However, while a judge is required to specify the evidence upon which he or she relies, there is no requirement that a court must explicitly state whether a witness is credible. Menards offers no authority for such a requirement and we find none.

Here, the compensation court heard Jakub's direct testimony subject to cross examination by Menards and questioning from the court and received numerous exhibits, many of which provided the examiner's impressions of Jakub's credibility. In its opinion, the court extensively outlined the evidence considered including 5 years of medical records. After considering this evidence, the court adopted Dr. McClellan's work restrictions for Jakub finding that he cannot work on a consistent basis. Clearly, the court found Jakub to be a credible witness.

Additionally, the evidence provided supports this finding of credibility. Jakub testified to his injuries and consistent summaries of his explanations of his injuries appear in numerous medical records. The surveillance provided to the court further corroborates Jakub's testimony on the extent of the injuries. In the video, Jakub is visibly limping, not moving at a consistent pace,

working slowly, and frequently readjusting his positions to perform certain tasks. For these reasons, the compensation court did not err in relying on Jakub's testimony in making its decision and was not required to explicitly state whether Jakub was credible.

DR. MCCLELLAN'S RESTRICTIONS

Menards next assigns as error that the compensation court failed to provide a reasoned, meaningful decision when it adopted Dr. McClellan's restrictions. Here, Menards claims the court failed to detail its reason for adopting Dr. McClellan's restrictions rather than those of Dr. Cornett. Dr. McClellan's opinion, Menards argues, provided the basis for the court's determination of Jakub's loss of earning capacity.

In its order, after summarizing the evidence, the court stated:

> With regard to restrictions and limitations [Jakub] is allowed to work, the Court adopts the restrictions of Dr. McClellan, and further finds that [Jakub] cannot work on a consistent basis. It is also important to note Dr. McClellan's statement on page 36 of Exhibit 29 that . . . neither he, the physical therapist[,] nor Dr. Cornett would hire [Jakub] because of his pain and not knowing "whether it's going to be a good day or a bad day."

The court further provided that Dr. Cornett's evaluation failed to "address the problem of the left anterior thigh pain."

As stated above, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Pearson v. Archer-Daniels-Midland Milling Co.,* 285 Neb. 568, 828 N.W.2d 154 (2013). As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

While rule 11(A) requires that a judge specify the evidence upon which the judge relies, we cannot say the court, in this instance, failed to fulfill that duty. The court received evidence detailing Dr. McClellan's and Dr. Cornett's opinions and provided an in-depth factual summary upon which it made its determinations. After this summary, the court explicitly adopted Dr. McClellan's restrictions noting that Dr. Cornett's opinions failed, in some instances, to address all of Jakub's injuries--namely his left anterior thigh pain. The court explained the evidence upon which it relied including the medical evaluations, reports, testimony, and depositions, and ultimately adopted Dr. McClellan's restrictions over those of Dr. Cornett. Again, the court's order complied with the requirements of rule 11 and provided sufficient basis for appellate review.

Additionally, sufficient evidence was received to support the court's determination. Dr. McClellan met with Jakub on numerous occasions as his treating physician and surgeon, reviewed other medical records and opinions, and had extensive knowledge of the injuries and treatment. Although, as Menard's notes, Dr. McClellan's opinion on Jakub's abilities progressed during his involvement with Jakub, this was a natural evolution of a treating physician over the course of treatment and evaluation. His findings were supported by the surveillance received into evidence, the functional capacity evaluation reports, and Jakub's testimony. As the fact finder, the court was in the optimal position to decide the credibility of the experts' opinions. See *Damme v. Pike*

*Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014) (Workers' Compensation Court is sole judge of credibility and weight to be given medical opinions, even when health care providers do not give live testimony). Therefore, we find the compensation court did not err in finding Dr. McClellan's opinion on Jakub's restrictions to be more credible than those of Dr. Cornett, and the court supplied a sufficient basis for appellate review.

ODD-LOT EMPLOYEE DETERMINATION

Menards also assigns the court erred in determining Jakub to be an odd-lot employee. Specifically, Menards claims the court's determination that Jakub is an odd-lot employee was not supported by sufficient evidence.

Under the odd-lot doctrine, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market. *Lovelace v. City of Lincoln*, 283 Neb. 12, 809 N.W.2d 505 (2012). The essence of the test is the probable dependability with which a claimant can sell his or her services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his or her crippling handicaps. *Id.*

The court received reports from three vocational rehabilitation specialists in this case. All three evaluators supplied two sets of opinions based upon whether Dr. McClellan's or Dr. Cornett's restrictions were adopted. The court adopted Dr. McClellan's restrictions and, as determined above, such adoption was supported by sufficient evidence. Thus, the remaining issue is whether there was sufficient evidence for the court to find Jakub was an odd-lot employee based upon the opinions utilizing Dr. McClellan's recommendations.

The opinion of Jane Yaffe-Rowell, the court-appointed vocational rehabilitation counselor, supports the court's determination that Jakub was an odd-lot employee. Yaffe-Rowell opined that when considering Dr. McClellan's opinions, Jakub's loss of earning capacity is approximately 75 percent. However, Yaffe-Rowell further provided that if considering Dr. McClellan's finding that Jakub's condition on a given day could affect his ability to work on a consistent basis, Jakub would meet the definition of odd-lot employee in that

> it would appear that Mr. Jakub would have difficulty maintaining even part-time, light duty employment as he would be unable to regularly adhere to a set schedule. Even if he were able to independently do some consulting with his experience as a Contractor or with the Financial Planning he has done with Primerica, he would still need to be able to maintain a schedule, albeit he would have a greater degree of flexibility than working for someone else. Regardless, it is not likely that either of those possible options would lead to a "suitable" level of employment.

As the court appointed vocational expert, Yaffe-Rowell's opinion is entitled to a rebuttable presumption. See Neb. Rev. Stat. § 48-162.01(3) (Reissue 2010) (loss of earning power evaluation performed by appointed vocational rehabilitation counselor is entitled to rebuttable presumption of correctness).

The evaluation by Jakub's rebuttal vocational expert Jack Greene also supports the court's finding. Greene, using Dr. McClellan's opinions, opined that Jakub's loss of earning power was

total. Greene supported this opinion by noting that Jakub's "inconsistent availability for performing employment would prevent him from either securing or maintaining any competitive position of employment within his regional labor market."

While Menard's rebuttal vocational expert Patricia Conway did opine that, using Dr. McClellan's opinions, Jakub's loss of earning power would be 75 percent, she did not address Dr. McClellan's opinion that Jakub could not work on a consistent basis even at a part-time, light-duty level.

Both Yaffe-Rowell's and Greene's opinions that Jakub is an odd-lot employee are corroborated by the medical reports and surveillance received into evidence and Jakub's direct testimony concerning his injury, pain, and ability. Additionally, their opinions are also supported by Dr. McClellan's finding that Jakub will "have trouble even performing at the light duty level on a day after day basis" and he will "have good and bad days that will limit his ability to work on a consistent basis."

Based upon all of the above, the court's determination that Jakub is an odd-lot employee is not clearly wrong in that there was sufficient evidence to support this finding. See *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014) (explaining that, in determining whether to affirm, modify, reverse, or set aside judgment of Workers' Compensation Court, trial judge's findings of fact will not be disturbed unless clearly wrong).

## CONCLUSION

The compensation court did not err in failing to address the credibility of Jakub in its order; failing to provide a reasoned, meaningful decision when the court adopted Dr. McClellan's restrictions; and determining that Jakub is an odd-lot employee. Such findings are supported by sufficient evidence in the record and the court provided a sufficient, reasoned basis for appellate review of its order. Accordingly, we affirm the court's July 2017 order.

AFFIRMED.