CAROLJEAN WATSON, APPELLANT, V. ALPO PET FOODS AND
CIGNA INSURANCE COMPANY, APPELLEES.

529 N.W.2d 139

Filed March 28, 1995.    No. A-94-793.

Mark E. Ford for appellant.

James J. DeMars, of DeMars, Gordon, Olson, Recknor & Shively, for appellees.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

MUES, Judge.

Caroljean Watson appeals the order of the Workers' Compensation Court review panel which affirmed the order of the trial judge. The trial judge found that Watson failed to prove that an injury to her right knee was the result of an accident arising out of and in the course of her employment with Alpo Pet Foods, but, rather, that it was the result of a " 'degenerative' problem with her right knee that was 'chronic' in nature." For the following reasons, we affirm.

## FACTS

The record reflects that Watson is a 37-year-old woman with a high school education. Watson began working for Alpo in September 1988. During the course of her employment, she has worked as a palletizer, depalletizer, baler room operator, table attendant, and control room operator and in sanitation.

Watson's petition, filed September 3, 1993, consists of two separate counts. In the first count, Watson alleged that on May 19, 1989, she injured her left knee when she slipped and fell during the course of her employment, and she required medical attention. Watson was treated by Dr. Andris Matisons after this initial injury. On June 6, 1992, her left knee was either reinjured or the prior injury was aggravated when she was required to work in ill-fitting rubber boots for her position in sanitation because her regular boots were missing. She again received medical treatment from Dr. Matisons. The Workers'

Compensation Court recognized that Alpo and CIGNA Insurance Company essentially conceded that the injury to Watson's left knee was compensable and awarded benefits accordingly. The compensability of the injury to Watson's left knee is not the subject of this appeal.

In her second count, Watson claimed that on July 18, 1992, while working in sanitation at Alpo, she slipped on cow udders lying on the floor at the bottom of a staircase and injured her right knee. It was Watson's uncontroverted testimony that she had no symptoms or problems with her right knee prior to this accident. The injury was reported to a supervisor, and Watson immediately sought medical attention from the Crete Municipal Hospital emergency room. Dr. Leon Jons, the emergency room physician, noted that she had a "[s]uprapatellar abrasion and contusion . . . with some mild swelling," but that the ligaments were intact and that she had normal range of motion in her knee, except that there was pain with extreme flexion. The x ray of her right knee was normal. Dr. Jons diagnosed a soft-tissue contusion to her right knee and subsequently released her. Watson did not see Dr. Jons any further for medical treatment.

Despite the fact that Watson's medical treatment for the injury to her left knee was ongoing at the time of, and following, the injury to her right knee, she first complained of problems with her right knee to her treating physician, Dr. Matisons, on November 18, 1992, some 4 months after the accident. In fact, Watson saw Dr. Matisons on three occasions after the July 18, 1992, accident for problems with her left knee, specifically, August 14, August 21, and October 5, without mentioning any problem with her right knee. On November 18, when she finally mentioned her right knee problems, Dr. Matisons examined her knee and took x rays, but noted no bony damage. He diagnosed Watson with a contusion of the right knee, "lateral anterior aspect." Again on January 8, 1993, Watson discussed the problems with her right knee with Dr. Matisons, who recommended that a magnetic resonance imaging (MRI) be performed. Dr. Matisons' "impression" of her right knee at that time was a "contusion . . . with possible internal derangement."

The MRI was performed on January 13, 1993, by Dr. David Kiple. His report stated:

> There is only minimal joint fluid present. The chondral joint margins appear normal. The patellar and quadriceps tendons are intact. The anterior and posterior cructiate [sic] ligaments appear normal. There are Grade II, linear areas of increased signal within the posterior horn of the medial meniscus. The lateral meniscus appeared normal. I could not see a tear communicating with either articular surface. IMPRESSION: Grade II degenerative changes within the posterior horn of the medial meniscus. Otherwise, normal magnetic imaging of the right knee.

In a letter dated March 17, 1993, Dr. Matisons diagnosed the difficulties with Watson's right knee as "[d]egenerative changes within posterior horn, medial meniscus" and acknowledged that arthroscopic surgery may be needed. Watson underwent arthroscopic surgery on July 29, 1993, for her right knee. Dr. Matisons' operative record indicates:

> Initial examination of the medial compartment failed to reveal any damage to the chondral surface, or to the medial meniscus. An MRI was performed earlier, and had shown that there were some degenerative changes involving the posterior horn of the medial meniscus. The medial meniscus area was thoroughly explored from above and below. Great care was taken, looking for any kind of damage that could be visualized on the surface. None was noted. Photographs taken to represent this, as well, indicating intact meniscus segment. Following this, ACL was examined. This was intact. The lateral compartment was examined, and the lateral horn was found to have a tear present in the posterior aspect. This was one of a chronic type, where the meniscus, itself, was just starting to get shredded. There was not a single tear, just sort of widening and shredding of the lateral horn. . . .
>
> Additional examination also revealed the under surface of the patella to be considerably roughened . . . .

Dr. Matisons' postoperative diagnosis of Watson's right knee injury was as follows: "1. Torn lateral meniscus, posterior horn, right knee. 2. Chondromalacia patella, right knee."

In a letter dated December 21, 1993, Dr. Matisons offered an opinion as to the cause of Watson's injuries and disability to her knees, including her right knee, stating:

I have been treating Carol Jean Watson for injuries to her knees from June 8, 1989, through December 15, 1993. During this time I have had repeated opportunities to examine her knees, review the history that she has presented to me, and each time with each knee injury she has clearly indicated a specific date, and that she was at work at Alpo Plant in Crete, Nebraska, when her injuries occurred.

Based on medical education, experience, and training, I can state with a reasonable degree of medical certainty that the injuries related by Mrs. Watson in regards to her knees were related to the accidents which injured her knees at work.

Dr. Matisons also attributed a 16-percent permanent partial impairment to Watson's right knee as a result of injury sustained at work. No conflicting medical evidence was adduced at trial.

Watson was absent from work for a substantial period of time due to the surgery and problems with her knees. She testified that she continued to experience problems with both of her knees after returning to work. Watson did not receive any compensation from Alpo for the injury, disability, or expenses related to her right knee.

## TRIAL COURT DECISION

A hearing was held before Judge Joseph S. Ramirez in the Workers' Compensation Court on February 3, 1994. The judge set forth, in detail, the findings in the medical records and letters, as discussed above. He also established the relevant principles of law upon which he was basing his decision:

It is well settled that the value of an opinion of an expert witness depends upon, and is no stronger than, the facts on which it is predicated. The opinion has no probative force unless the premises upon which it is based are shown to be true. Niesen v. Logan County COOP Oil Assn., 215 Neb. 587, 340 N.W. 2d 146 (1983). Furthermore, this

Court is not required to take the opinions of such experts as binding upon it. Butler v. Midwest Supply Co.[,] 212 Neb. 421, 322 N.W. 2d 815 (1982).

Relying upon these principles, the trial court found that Watson failed in her burden to show, by a preponderance of the evidence, that the injuries to her right leg were a result of an accident that occurred with the first named defendant on July 18, 1992. Rather, the evidence shows that she had a "degenerative" problem with her right knee that was "chronic" in nature.

The court thereafter denied all compensation for disability and expenses related to Watson's right knee and also denied compensation where the records did not sufficiently reflect that treatments or absenteeism from work were related solely to the left knee, finding that Watson failed to sustain her burden of proof. On appeal, Watson does not contend that she is entitled to additional compensation for injuries and disability related to her left knee.

## REVIEW PANEL DECISION

Without setting forth a detailed opinion, the Workers' Compensation Court affirmed the trial judge's decision on review, finding that the trial judge's decision was not clearly wrong and that no error of law appeared. The review panel recognized that Judge Ramirez discussed in detail why he chose to "disregard the opinion of Dr. Matison[s] with respect to the cause of [Watson's] right knee condition" and restated the principle that "[i]t is axiomatic that the Nebraska Workers' Compensation Court is not required to take an expert's opinion as binding and may, as may any other trier of fact, either accept or reject such an opinion. Brandt v. Leon Plastics, Inc., 240 Neb. 517, 483 N.W.2d 523 (1992)."

## ASSIGNMENTS OF ERROR

Watson's assigned errors can be summarized as alleging that the Workers' Compensation Court review panel erred in affirming the decision of the trial judge in (1) failing to find that the injury and disability to her right knee were the result of an accident arising out of and in the course of her employment with Alpo, and (2) failing to award certain benefits associated

with her right knee injury, including temporary total disability, permanent partial disability, medical expenses, and a 50-percent penalty for waiting time and attorney fees.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court award only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Haney v. Aaron Ferer & Sons*, 3 Neb. App. 14, 521 N.W.2d 77 (1994); *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994). In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge, whose decision has the same force and effect as a jury verdict. *Haney, supra*. See *Pearson, supra*. When testing the sufficiency of the evidence to support findings of fact by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, and the successful party will have the benefit of every inference reasonably deducible from the evidence. See *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991). Findings of fact made by a Workers' Compensation Court trial judge are not to be disturbed upon appeal to a review panel unless they are clearly wrong, and if the record contains evidence which substantiates the factual conclusions reached by the trial judge, the review panel should not substitute its view of the facts for that of the trial judge. It naturally follows that we also do not substitute our view of the facts for that of the trial judge. See *Pearson, supra*.

## ANALYSIS

Watson argues the trial judge erred in finding that she failed to prove by a preponderance of the evidence that the injury and attendant disability to her right knee were the result of an

accident which occurred in the course and scope of her employment with Alpo. As stated above, the trial judge found that the evidence demonstrated that Watson "had a 'degenerative' problem with her right knee that was 'chronic' in nature." Implicit in this finding is that Watson's right knee condition was of longstanding origin which preexisted the work accident. The principal issue in contention on appeal is the trial judge's obvious rejection of Dr. Matisons' December 21, 1993, letter regarding causation of the right knee condition. A review of the record discloses that Watson presented medical testimony through Dr. Matisons' records and December 21 letter that her injury resulted from an accident arising out of and in the course of her employment and that she has a permanent disability. Alpo offered no conflicting expert medical testimony.

The Nebraska Supreme Court has held that in a workers' compensation case involving a preexisting condition, it is the claimant's burden to prove by a preponderance of the evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. *Liberty v. Colonial Acres Nsg. Home*, 240 Neb. 189, 481 N.W.2d 189 (1992); *Miner, supra*. The Supreme Court has established that unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish a causal relationship between the incident and the injury or disability. *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992); *Miner, supra*. The issue of causation of an injury or disability is one for determination by the trier of fact, whose findings will not be set aside unless clearly wrong. *Bernhardt, supra*; *Liberty, supra*.

As we understand the trial judge's order, it is clear that he carefully considered all of Dr. Matisons' medical records and those prepared by others with regard to Watson's right knee, but apparently determined that Matisons' final opinion, that the injury and disability were work related, as stated in the December 21, 1993, letter, contradicted earlier statements contained in the medical records referring to the presence of right knee "degenerative changes" and his own operative report

which described the tearing of the lateral meniscus as "of a chronic type."

The Supreme Court has recognized that the opinion of an expert must be examined in the context of the expert's entire testimony. See *Miner, supra*. As such, it is proper to evaluate Dr. Matisons' opinion from all of his medical records and letters. The Workers' Compensation Court trial judge, as the trier of fact, is the sole judge of the credibility of witnesses and weight to be given testimony. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994); *Pearson, supra*. Moreover, the trial judge is not required to accept an expert's opinion as binding and may accept or reject an opinion from an expert witness. See, *Bernhardt, supra*; *Liberty, supra*.

The issue presented requires us to examine cases wherein the rejection of an expert opinion by the factfinding body in a workers' compensation case has been addressed by the Supreme Court. In *Mann v. City of Omaha*, 211 Neb. 583, 319 N.W.2d 454 (1982), the plaintiff presented uncontroverted medical testimony that the cause of his injury, i.e., heart problems, was work-related. The defendant offered no medical evidence. The Supreme Court recognized the general principle that the opinions of experts are not binding on the court, but held:

However, where the medical testimony is uncontroverted, unimpeached, and is given in matters of medical diagnosis which are peculiarly within the range of the knowledge of the expert, the compensation court is not free to substitute its own diagnosis. It is not true that in every case the uncontested opinion of an expert is binding on the trier of fact, but where, as here, the testimony is based on firsthand knowledge, is credible, and has no demonstrable weaknesses or failure of foundation, such testimony cannot be ignored.

*Id*. at 592-93, 319 N.W.2d at 459. The court reversed the orders of the trial judge and the three-judge panel of the Workers' Compensation Court which had denied the plaintiff compensation.

In *Spangler v. State*, 233 Neb. 790, 448 N.W.2d 145 (1989), the Supreme Court addressed this issue again, but resolved the

issue against plaintiff Spangler by affirming the compensation court's order of dismissal. Spangler claimed that his heart problems were caused by work-induced stress. The court recognized that two physicians testified that the stresses of Spangler's employment contributed to and aggravated his heart problems, but one of those physicians was unable to determine how much of that aggravation was attributable to his work stress and how much was attributable to the personal risk factors present in Spangler's situation. The court distinguished *Mann* by noting that in that case, the only physician to offer testimony stated that it was " 'inconceivable' " that the personal risk factors were significant contributors to his heart problems and "instead opined unequivocally that the heart attack was caused by work-related rises in blood pressure." *Spangler*, 233 Neb. at 798-99, 448 N.W.2d at 151. The court recognized the holding in *Mann* set forth above, but qualified it by stating:

> Nonetheless, it must be remembered that in workers' compensation cases, issues with regard to the cause of injury and disability are matters of fact to be determined by the Workers' Compensation Court, which sits as the finder of fact. . . . As the finder of fact the compensation court is not required to take the opinion of an expert in regard to the causal connection between the alleged accident or exertion and the resulting disability as binding upon it.

(Citation omitted.) *Spangler*, 233 Neb. at 798, 448 N.W.2d at 151. The court found that there was "sufficient evidence for the compensation court to determine that Spangler's work-related stress did not contribute in a material and substantial degree to cause his heart" problems and that it was "merely the regrettable result of the normal progression of his condition." *Id*. at 799, 448 N.W.2d at 151.

Finally, in *Brandt v. Leon Plastics, Inc.*, 240 Neb. 517, 483 N.W.2d 523 (1992), plaintiff Brandt offered expert medical testimony by a physician in the form of letters. In three of the letters, the physician wrote that "in his opinion, Brandt's injury was, to a reasonable degree of medical certainty, caused by the repetitive and cumulative trauma she sustained during her

employment at Leon Plastics." *Id.* at 520, 483 N.W.2d at 525. However, in one letter, the physician attributed Brandt's disability to a work-related injury occurring on a specific date. In a subsequent letter, the physician explained that his previous reference to a specific date was "inadvertent and that date was intended only to approximate the onset of the radiating pain into her leg." *Id.* No other medical evidence on causation was presented. The Supreme Court found that it was for the compensation court to determine whether or not to believe the physician's explanation for the discrepancy in the letters, and that court resolved the issue against Brandt. The Supreme Court recognized the general rules that "where the testimony of the same expert is conflicting, resolution of the conflict rests with the trier of fact" and that the "compensation court is not required to take an expert's opinion as binding and may . . . reject such an opinion." *Id.* The court thereafter affirmed the dismissal of Brandt's claim for benefits.

Although Watson asserts that the rule set forth in *Mann* is applicable in the instant action, based upon the record before us, we see significant distinguishing factors. In *Mann*, the medical testimony presented by only one expert was entirely consistent and truly uncontroverted. Contrary to Watson's assertions, the medical evidence in this action is not entirely uncontroverted. First, both the emergency room doctor's records and the report setting forth the results of the MRI contradict the December 21, 1993, letter from Dr. Matisons. Second, Dr. Matisons' December 21 letter contradicts his own previous records, which indicated that the injury was "degenerative" or "chronic," without even attempting to explain those inconsistencies. This letter, prepared prior to trial, does not specifically detail Dr. Matisons' reasoning behind his conclusion that the right knee problems were attributable to Watson's employment, particularly in light of the fact that up until that time the records indicated "degenerative" and "chronic" problems. Had Dr. Matisons' opinion recognized the preexisting nature of Watson's knee problems; specified that the July 1992 fall had aggravated them to cause the injury; and described that without that fall, such injury would not have occurred, his opinion would, perhaps, have been stronger.

However, his opinion ignored the obvious. The weight and credibility to be accorded the opinion of an expert is for the fact finder, in this case, the trial judge, and the value of an expert's opinion is no stronger than the facts upon which it is based. See *Liberty v. Colonial Acres Nsg. Home*, 240 Neb. 189, 194, 481 N.W.2d 189, 193 (1992) ("[a]n expert opinion that consists of an X on a questionnaire that details no factual basis for the opinion or the expert's reasoning behind the opinion may explain the lack of credibility or weight the compensation court apparently attributed to [the] opinion as to the cause of [the] injuries"). It would be naive to suggest that the extent and specificity of medical opinions are not considered by the fact finder in determining the weight to be afforded them. The fact that Dr. Matisons' letter regarding the cause of Watson's injury and attendant disability merely stated that the injury was work related and failed to include a factual basis or reasoning as to how the opinion was reached or why it contradicted previous records which indicated that the problems were "degenerative" or "chronic" may explain why the trial judge attributed little or no weight to the opinion.

There are "demonstrable weaknesses" present in Dr. Matisons' December 21, 1993, letter which affect its weight and credibility and which render the rule set forth in *Mann* inapplicable so as to justify its disregard by the trial judge. It was for the trial judge to initially determine whether to accept Dr. Matisons' opinion that Watson's injury was work related, when it provided no explanation for the earlier medical evidence, some of it provided by Matisons himself, which described the condition as "degenerative" in nature and the tear itself as "chronic." Since Dr. Matisons' medical conclusions conflicted, resolution of the conflict rested with the trial judge. See *Brandt v. Leon Plastics, Inc.*, 240 Neb. 517, 483 N.W.2d 523 (1992). We cannot substitute our view of the facts for that of the trial judge if the record contains evidence to substantiate his view. See *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994). It was not clearly wrong for the trial judge to resolve the inconsistencies in the medical records against Watson and to conclude that she failed to meet her burden of proving by a preponderance of the evidence that the

injury to her right knee was the result of a work-related accident.

Because we conclude that the trial judge was not clearly erroneous in determining that Watson's right knee injury was not compensable, we need not consider Watson's remaining assigned errors.

AFFIRMED.