JAMES H. MONAHAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF THOMAS E. ROBERTSON, DECEASED, APPELLANT, V. UNITED STATES CHECK BOOK COMPANY, APPELLEE.

540 N.W.2d 380

Filed December 12, 1995. No. A–95–209.

James H. Monahan, of Monahan & Monahan, pro se.

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Appellant, James H. Monahan, seeks benefits for the death of Thomas E. Robertson, which occurred as the result of a purely personal assault by his estranged wife at Robertson's workplace. The Workers' Compensation Court review panel affirmed the Workers' Compensation Court's decision denying benefits for the death of Robertson. Because we find there is evidence to support the findings of the court and the court's factual determinations are not clearly erroneous, we affirm.

## II. FACTUAL BACKGROUND

This case concerns the right of Thomas E. Robertson's estate to receive workers' compensation benefits for his death. Robertson's death was caused by his wife, Janette Rae Radtke–Robertson (Radtke), while he was working at his

employer's place of business. The action is brought to secure benefits for Robertson's minor child. Robertson's minor child, Wendy Whited, was born to Robertson and a previous wife, Janet L. Robertson. Robertson was divorced from Janet Robertson by decree dated March 20, 1991.

Robertson was later married to Radtke. Robertson and Radtke were both employees of United States Check Book Company, in Omaha, Nebraska, although they worked separate jobs at separate times of day. The couple's relationship was stormy, and Radtke moved her belongings out of the couple's home to her parents' home in Murray, Nebraska, in July 1992 after Robertson had beaten her.

The record indicates that Robertson was attempting a one-sided reconciliation with Radtke, and he had made arrangements to move her belongings back to the couple's home on the morning of February 20, 1993. Robertson's usual hours of employment were from 10 p.m. to 6 a.m. He was responsible for nighttime maintenance and janitorial services, and he kept watch over the premises. Robertson was fatally shot between 2 and 6 a.m. on February 20. Robertson's body was found approximately 50 feet inside an entrance door that was equipped with a bell and window for nighttime admission to the premises. There was no sign of forced entry, and the door was locked and secure the next morning when his body was discovered. Radtke was eventually convicted of second degree murder in the case after entering a guilty plea.

Testimony admitted at the trial of this case indicates that Radtke had a professed fear of Robertson and did not want to move back in with him for fear that he would beat her again or kill her. Robertson had apparently threatened on more than one occasion to kill Radtke.

The record indicates that sometime in the past, Radtke had tried to hire someone to kill Robertson for her. Approximately 1 week before she killed Robertson, Radtke had obtained a gun from a friend, Teri Parks. Parks testified by deposition that she had provided Radtke with a gun and that in the early morning hours of February 20, 1993, Radtke had visited Parks and obtained another gun because the first one did not work properly. During this early morning visit, Radtke related to

Parks that she was afraid of Robertson and that he had threatened to kill her if she did not move back in with him. Radtke further told Parks she did not want to move back in with Robertson for fear that he would beat her again. The record also reflects that Robertson had a company life insurance policy and pension fund, both of which apparently named Radtke as beneficiary.

The Workers' Compensation Court entered an order of dismissal on August 11, 1994, finding that Robertson was shot to death by Radtke "because of personal differences between them and a professed fear on the part of Janette Radtke that she would suffer injury or death at the hands of Thomas Robertson if she did not kill him first." The court further found that the killing "arose out of a personal dispute and not any dispute . . . having its roots or origins in their employment." Because the court found that the death did not arise out of the employment, the petition for benefits was dismissed. A review panel affirmed the decision of the court on February 9, 1995. This appeal followed.

## III. ASSIGNMENTS OF ERROR

Appellant alleges four errors in this appeal, which we have consolidated to one for discussion. Appellant alleges that the lower court erred in holding that Robertson's death did not arise out of his employment because his night job facilitated the murder.

## IV. ANALYSIS

■ For benefits to be recovered under the Nebraska Workers' Compensation Act, the claimant must prove that the employee suffered injuries because of an accident arising out of and in the course of his or her employment. Neb. Rev. Stat. § 48–101 (Reissue 1993); *Nunn v. Texaco Trading & Transp.*, 3 Neb. App. 101, 523 N.W.2d 705 (1994). There is no dispute in this case that Robertson's death satisfies the requirements of "accident," as that term is construed in workers' compensation law, and that the incident occurred in the course of his employment. The only issue on this appeal is if Robertson's murder arose out of his employment.

■ The phrase "arising out of the employment" is used to describe " ' "the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising from within the scope or sphere of the employee's job." ' " *Nunn*, 3 Neb. App. at 107, 523 N.W.2d at 709 (quoting *Nippert v. Shinn Farm Constr. Co.*, 223 Neb. 236, 388 N.W.2d 820 (1986)). Appellate courts in this state have not been called upon to determine whether injury or death resulting from an assault motivated by purely personal reasons can be said to have arisen out of the employment.

### 1. PERSONAL ASSAULTS AT WORKPLACE

■ The Nebraska Supreme Court has never specifically decided a case where the issue on appeal concerned an employee who was assaulted at the workplace for purely personal reasons. The court has noted, however, in cases resolved on the basis that an assault on an employee involved risks that were distinctly associated with the employment, that the general rule is that where an assault is committed by a person intending to injure the employee because of reasons personal to him, and not for reasons directed against him as an employee or because of his employment, the injury does not arise out of the employment. See, *P.A.M. v. Quad L. Assocs.*, 221 Neb. 642, 380 N.W.2d 243 (1986); *Myszkowski v. Wilson and Company, Inc.*, 155 Neb. 714, 53 N.W.2d 203 (1952). In *P.A.M.*, the court noted that where an assault is committed by a person " 'intending to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment, the injury does not arise out of the employment . . . .' " 221 Neb. at 649, 380 N.W.2d at 248 (quoting 99 C.J.S. *Workmen's Compensation* § 227 (1958)). See 1 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 11.11(b) (1995). Similarly, in *Myszkowski*, the court observed that " '[p]ractically all authority holds that an assault by one employee upon another for personal reasons, not growing out of the relation as fellow employees, or out of acts in the performance of their work, cannot be held to arise out of the employment.' " 155 Neb. at 719–20, 53 N.W.2d at 207. In both *P.A.M.* and *Myszkowski*, however, the court ultimately

decided that the assault in question was not the result of purely personal animosity, but, rather, was a dispute over some element of the employment. In the present case, there is no dispute that the assault by Radtke which resulted in Robertson's death was motivated by purely personal and domestic animosities, not anything concerned with their employment at United States Check Book Company.

As the Nebraska Supreme Court mentioned in *P.A.M.* and *Myszkowski*, the general rule is that assaults motivated by personal reasons, although occurring at work, are not compensable under workers' compensation law. See 1 Larson & Larson, *supra*, § 11.00 at 3-178 ("[a]ssaults for private reasons do not arise out of the employment unless, by facilitating an assault which would not otherwise be made, the employment becomes a contributing factor"). See, also, *id.*, § 11.21(a) at 3-274 ("[w]hen the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test"); 82 Am. Jur. 2d *Workers' Compensation* § 358 at 393 (1992) ("where an employee is assaulted and injury is inflicted upon him through animosity and ill will arising from some cause wholly disconnected with the employer's business or the employment, the employee cannot recover compensation simply because he is assaulted when he is in the discharge of his duties").

## 2. Assaults Facilitated by Employment

All risks causing injury to an employee can be placed within three categories: (1) risks distinctly associated with the employment, (2) risks personal to the claimant, and (3) "neutral" risks—i.e., risks having no particular employment or personal character. 1 Larson & Larson, *supra*, § 7.00. Harms from the first category are universally compensable. *Id.* In Nebraska, harms from the third category can also be compensable. See, *Nippert v. Shinn Farm Constr. Co.*, 223 Neb. 236, 388 N.W.2d 820 (1986); *Nunn v. Texaco Trading & Transp.*, 3 Neb. App. 101, 523 N.W.2d 705 (1994). However, harms which arise in the second category, from risks personal

to the employee, are universally noncompensable. 1 Larson & Larson, *supra.*

The assault in the present case was the result of a risk personal to Robertson, i.e., a purely personal dispute, but appellant claims that the employment contributed to the assault. Professor Larson has noted that in order for an assault for personal reasons to. be brought within the sphere of "arising out of the employment," the employment must somehow exacerbate the animosity or dispute or facilitate an assault which would not otherwise be made. See 1 Larson & Larson, *supra*, §§ 11.00 and 11.21(a).

In this appeal, appellant is essentially arguing that Robertson's night job facilitated the assault by affording Radtke a better opportunity to commit the crime without being detected. The record indicates that Robertson was the only employee in the building during the nighttime hours. The building was apparently locked at approximately 4:30 every evening, and Robertson had a key to allow himself access when he came to work. There was an employees' entrance equipped with some variety of bell so that any employee needing access to the building after hours could ring the bell and have Robertson let him or her in. The entrance also had a window so that Robertson could see who was seeking admittance prior to opening the door. The record indicates that Radtke did not have a key and that the door was locked and secure when Robertson's body was found the next morning. Appellant argues that the door was frequently left unlocked, which exposed Robertson to a risk that anyone could enter the building and assault him in the solitude of the empty building during the night hours. Appellant contends that Robertson's employment as the only night employee in the building facilitated Radtke's assault on him because it afforded her an opportunity to commit the crime with less likelihood of being detected.

In discussing the factual situation where a night watch employee is murdered for personal reasons, Professor Larson acknowledges that the determination of whether the employment creates a situation wherein an assailant will commit a crime that she would not otherwise commit is a difficult question of fact. 1 Larson & Larson, *supra*, § 11.23(a). It is precisely because it

is a difficult question of fact that we cannot reverse, set aside, or modify the trial court's ruling in this case.

Neb. Rev. Stat. § 48–185 (Reissue 1993) provides that an appellate court may modify, reverse, or set aside a Workers' Compensation Court award only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award of the compensation court was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Watson v. Alpo Pet Foods*, 3 Neb. App. 612, 529 N.W.2d 139 (1995); *Haney v. Aaron Ferer & Sons*, 3 Neb. App. 14, 521 N.W.2d 77 (1994).

In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, an appellate court reviews the findings of the trial court, whose decision is afforded the same force and effect as a jury verdict. *Id.*; § 48–185. When testing the sufficiency of the evidence to support the factual findings of the trial court, the evidence is considered in the light most favorable to the successful party, and the successful party is given the benefit of every inference reasonably deducible from the evidence. *Watson, supra; Haney, supra.* See, also, *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991).

Findings of fact made by a Workers' Compensation Court trial judge are not to be disturbed on appeal to a review panel unless they are clearly wrong, and if the record contains evidence which substantiates the factual conclusions reached by the trial judge, the review panel should not substitute its view of the facts for that of the trial judge. *Watson, supra.* An appellate court also does not substitute its view of the facts for that of the trial judge. *Id.*

Although it is indeed plausible that Radtke would not have assaulted and murdered Robertson but for the fact that he worked alone at night, it is equally plausible that she would in fact have assaulted and murdered him anywhere on the night in question to prevent him from forcing her to move back in with him the next day. There is nothing in the record to indicate that Radtke had as a motive for murdering Robertson at work the

decreased likelihood that she would be caught. On the other hand, there is ample evidence to support the conclusion that she was desperate and fearful of Robertson to the point of killing him before he killed her.

The record indicates that Robertson had threatened to kill Radtke. Radtke had confided her fear of Robertson to friends on more than one occasion. Radtke first left Robertson after she was hospitalized because he beat her. Robertson's repeated efforts at reconciliation somehow resulted in a plan for him to use a company truck on February 20, 1993, to move her belongings back to the couple's home. There is evidence in the record that she did not want to move back in and had only agreed to do so after Robertson threatened to kill her if she refused. The record further reflects that Radtke was so afraid of Robertson that she tried to hire someone to kill him and having failed in that effort, procured a gun from a friend. On the night Robertson was killed, Radtke again expressed her fear that Robertson would do her violence if she moved back in with him or kill her if she refused. It is entirely plausible that Radtke was in such a mental state that she would have killed Robertson wherever he was on the night in question, so as to avoid being forced to move back in with him the next day.

The trial court's determination that this assault did not arise out of Robertson's employment is supported by the court's factual findings that Radtke killed Robertson purely out of personal reasons and fear entirely unrelated to the employment. Further, there is ample evidence to support the conclusion of the trial court that Radtke was motivated to kill because of her fear, not because of the likelihood of being undetected.

In reaching this conclusion, we are aware that other jurisdictions have affirmed trial-level decisions that personal assaults were compensable because the work facilitated the assault. See, e.g., *California Comp. & Fire Co. v. Workmens' Comp. App. Bd.*, 68 Cal. 2d 157, 436 P.2d 67, 65 Cal. Rptr. 155 (1968) (trial-level tribunal determined that work facilitated personally motivated assault, and appellate court held findings were not clearly erroneous). We do not believe that our decision today is contrary to such holdings to the extent that the determination that work did or did not facilitate the assault is a

question of fact for the trial–level tribunal to decide. On the record presented to us, we cannot say that the decision of the trial court was not supported by sufficient evidence in the record or was clearly erroneous.

## V. CONCLUSION

Because we do not find that the trial court was clearly erroneous in its factual determinations and because there is sufficient evidence in the record to support the court's order, we affirm.

AFFIRMED.