CATALINO VARELA, APPELLEE AND CROSS-APPELLANT, V. FISHER ROOFING CO., INC., AND UNION INSURANCE COMPANY, APPELLANTS AND CROSS-APPELLEES.

567 N.W.2d 569

Filed May 20, 1997.  No. A-96-1069.

Dallas D. Jones and Thomas B. Wood, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant Fisher Roofing Co., Inc.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellee.

IRWIN, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

While working as a laborer and roofer, Catalino Varela fell and fractured his right ankle. At that time, Varela either was preparing to engage in or was actually engaged in an arm-wrestling match with a coworker, Pastor "Tony" Gonzales. The Workers' Compensation Court awarded Varela workers' compensation benefits. Fisher Roofing Co., Inc., and its workers' compensation insurance carrier, Union Insurance Company, appealed to a three-judge review panel of the Workers' Compensation Court, which affirmed the award and added an attorney fee of $2,000 for an unsuccessful appeal. Because the nature of the injury and the amount of benefits are not disputed by the parties, we dispense with detailing that aspect of the case. Fisher and Union's appeal concerns solely whether Varela was injured in an accident arising out of and in the course of his employment. Varela has filed a cross-appeal, arguing that he should have received an award of attorney fees, costs, and interest at the trial level because Fisher and Union delayed payment of his benefits.

## FACTUAL BACKGROUND

A roofing crew from Fisher was working at the Banner County School in Harrisburg, Nebraska, on September 28, 1994. This crew included a number of Hispanic workers, including Varela, who worked as an "assistant" because, in his words, "I would help the others . . . that knew the job, I didn't know very much." Another worker present was Gonzales, who has been working for Fisher in excess of 12 years. On the day in question, the crew was preparing to do roofing work on the school. The preparations included moving their equipment onto the roof and sweeping the roof's surface. Although Varela, testifying through an interpreter, denies any horseplay, there is substantial evidence that the men were mocking Varela's work efforts for carrying a half-full bucket of material when others were carrying heavier buckets. In response, Varela issued a challenge to Gonzales to arm-wrestle. The record is unclear as to exactly how the participants were physically positioned, except that Varela had one foot on the edge of a raised skylight and that both men fell, at which time Varela's ankle was severely fractured. Fisher's employee handbook, written in English, prohibits "[b]oisterous or disruptive activity in the workplace" and fighting. Varela does not read English.

## TRIAL COURT DECISION

The trial court found that Varela was injured in an accident arising out of and in the course of his employment, specifically finding that the injury occurred as a result of Varela's good-natured challenge of Gonzales to an arm-wrestling contest. The trial court found that the deviation was insubstantial and did not create a formidable, independent hazard. The trial judge observed that although there was no factually similar appellate case in Nebraska on "horseplay," reliance could be placed on a Wisconsin decision, *Bruns Volkswagen, Inc. v. DILHR*, 110 Wis. 2d 319, 328 N.W.2d 886 (Wis. App. 1982), as well as 1A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 23.00 (1996). The court also commented: "Anyone who has worked construction is aware that mock insults, denigration of one's manhood and assorted dirty tricks are a part of the daily routine among a crew of laboring men."

The review panel of the Workers' Compensation Court noted Fisher and Union's argument that the injury did not occur by a risk arising out of or in the course of the employment, because of the arm-wrestling contest. The review panel cited *Myszkowski v. Wilson and Company, Inc.*, 155 Neb. 714, 53 N.W.2d 203 (1952), and found that the trial court was not clearly wrong in its conclusion that the injury arose out of and in the course of the employment. Varela requested that the review panel award attorney fees, costs, and interest. He based this request on Neb. Rev. Stat. § 48-125 (Reissue 1993) and the theory that 30 days' notice of unpaid medical bills had been given. The review panel rejected this claim, finding that such fees and interest are available only when there is no reasonable controversy. The review panel found that a reasonable controversy existed, citing *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984). However, attorney fees were awarded in the amount of $2,000 because the employer had been unsuccessful on appeal to the review panel. As stated above, Fisher and Union now appeal, and Varela cross-appeals.

## ASSIGNMENTS OF ERROR

Fisher and Union assign 10 errors which, in one way or another, all assert that the trial court erred in finding that Varela's injury was caused by an accident which arose out of and in the course of his employment and that the review panel erred in affirming such an award. The assignments of error on Varela's cross-appeal are that the trial court and the review panel erred in failing to award attorney fees and interest to him and against Fisher and Union when medical bills remained unpaid and delinquent after 30 days' notice, citing § 48-125(1) and (2). Varela also assigns error in the failure to award costs against Fisher and Union under Neb. Rev. Stat. § 48-172 (Reissue 1993).

## STANDARD OF REVIEW

Findings of fact made by the Workers' Compensation Court trial judge are not to be disturbed upon appeal to a review panel unless they are clearly wrong, and if the record contains evidence which substantiates the factual conclusions reached by the trial judge, the review panel shall not substitute its view of

the facts for those of the trial judge. *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994). It naturally follows that we also do not substitute our view of the facts for that of the trial judge. When testing the sufficiency of the evidence to support findings of fact by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

## ANALYSIS

There is no question that Varela was injured while on the roof of the Banner County School in Harrisburg. Workers' compensation benefits are payable when personal injury is caused to an employee by an accident arising out of and in the course of his or her employment. Neb. Rev. Stat. § 48-101 (Reissue 1993). This statutory language is conjunctive, requiring a claimant to establish both conditions by a preponderance of the evidence. *Johnson v. Holdrege Med. Clinic*, 249 Neb. 77, 541 N.W.2d 399 (1996). The phrase "arising out of" describes the accident and its origin, cause, and character, i.e., whether it resulted from a risk arising within the scope of the employee's job, whereas the phrase "in the course of" refers to the time, place, and circumstances of the accident. *Id.*

The evidence shows, and the Workers' Compensation Court trial judge found, that Varela's injury had its genesis in some on-the-job activity which can fairly be called horseplay. The issue is whether an injury sustained in the course of horseplay is not compensable because it either does not arise out of the employment or does not occur in the course of the employment.

The "in the course of" requirement has been defined as testing the work connection as to time, place, and activity, or in other words, it demands that the injury be shown to have arisen within the time and space boundaries of the employment and in

the course of an activity whose purpose is related to the employment. *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996). The "arising out of" requirement is concerned with causation. *Id.*

There does not appear to be a "horseplay" case in Nebraska in the workers' compensation arena. The closest indication of how to address the issue is found in the cases addressing assault injuries in the workplace. The leading case in this area is *Myszkowski v. Wilson and Company, Inc.*, 155 Neb. 714, 53 N.W.2d 203 (1952). In *Myszkowski*, prior to the day of the incident at issue, the injured employee, Myszkowski, and a coemployee, Price, had encountered difficulties arising out of their work relationship. On the day in question, while operating a forklift, Myszkowski honked for Price to step aside. Price refused and continued to walk in front of the forklift. As the forklift passed Price, it hit his foot, angering him and prompting him to strike Myszkowski with his fist. Myszkowski then attempted to use the forklift to pin Price against other equipment. Price retaliated by striking Myszkowski with a meat paddle. Myszkowski sustained a broken arm when he attempted to ward off the blow.

The court in *Myszkowski* initially distinguished work assaults from purely personal quarrels, holding that if the work causes quarrels and fights, although woven with emotional disturbance, such work-induced assaults are not a departure from the work. The Supreme Court found that Myszkowski was entitled to workers' compensation benefits, reasoning as follows:

> "Arguments, altercations and assaults are as inevitable as they are undesirable. Where they arise out of the employment, they may be properly regarded as an employment hazard." Newell v. Moreau, on rehearing, 94 N. H. 443, 55 A. 2d 476.

This is well stated in Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530, as follows: "All concur in the rule that the accident, to be within the Compensation act, must have had its origin in some risk of the employment. No fixed rule to determine what is a risk of the employment has been established. Where men are working together at the same work disagreements may be

expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which two men are engaged and as a result of it one injures the other, it may be inferred that the injury arose out of the employment."

While there seem to be some cases which hold contrary to this view, we think the following from 58 Am. Jur., Workmen's Compensation, § 266, p. 767, fairly summarizes the holdings in general: "While there is some lack of harmony among the decisions, it may be stated that in most instances an injury to an employee as a result of an assault by a coemployee, committed in the course of the employment and growing out of some incident or condition thereof, and not done solely for the gratification of personal ill will, is held to be compensable as arising out of the employment." A careful study of the cases indicates that what lack of harmony there is flows more from determining what principles are applicable, in view of the facts involved, than it does to any difference in the principles themselves.

*Myszkowski v. Wilson and Company, Inc.*, 155 Neb. at 718-19, 53 N.W.2d at 207.

The court in *Myszkowski* also considered the employer's defense of willful negligence on the part of the injured worker, holding that it was the employer's burden to establish such defense and then finding that the defense required " 'such conduct as evidences reckless indifference to safety,' " but that Myszkowski's conduct was not of that character. 155 Neb. at 722, 53 N.W.2d at 209. Thus, Myszkowski recovered workers' compensation benefits. Here, Fisher and Union claim that Varela was willfully negligent and that any recovery is thereby barred. Although the incident may seem foolish or childish, there is no evidence of reckless indifference to safety. Thus, we need not discuss this defense any further.

Given that the injury in *Myszkowski*, which included a chase and attempted assault with a forklift and an attack with a meat

paddle, was considered compensable by the Supreme Court, we find it difficult to envision that Varela's injury is not also compensable. The essence of the instant case includes some teasing about whether Varela was carrying his fair share of work materials, a challenge of arm-wrestling to prove strength and manhood, and an accidental fall which injured Varela. We find that this minor and playful dispute involving Varela and Gonzales is connected more to the workplace than to long-simmering hostility, as in *Myszkowski*. In *Myszkowski*, the activity leading to the injury was a full-fledged battle, with the tools of the workplace becoming the weapons of war. The instant situation, in contrast, involved a friendly contest of strength.

By way of further contrast, we note *Monahan v. United States Check Book Co.*, 4 Neb. App. 227, 540 N.W.2d 380 (1995), a case in which a wife shot and killed her estranged husband at their mutual workplace. This court upheld the denial of workers' compensation benefits, contrasting the case with *Myszkowski*, saying that there was no dispute that the assault by the wife which resulted in the husband's death "was motivated by purely personal and domestic animosities, not anything concerned with their employment at United States Check Book Company." *Monahan v. United States Check Book Co.*, 4 Neb. App. at 232, 540 N.W.2d at 384. In the instant case, there is no evidence whatsoever of any preexisting difficulties, on or off the job, between Varela and Gonzales. All of the evidence shows that their arm-wrestling match arose spontaneously out of work-related banter. It was an accidental slip during the course of this momentary horseplay which caused Varela's injury.

Although Fisher and Union assail the trial judge's observation that incidents such as that revealed by the record here are part of the daily routine among laboring men, it goes without saying that not every second of the workday, regardless of the nature of work being performed, is exclusively devoted to the business of the employer. To suggest otherwise, and to hold that anything but the strictest adherence and attention to the employer's work prevents recovery of compensation would be, in the first instance, unrealistic, and in the second, outside of established principles of workers' compensation law.

There is the suggestion that an assault case like *Myszkowski* is not analogous to a horseplay case because an assault is a

spontaneous and unpremeditated reaction to the effect of the work surroundings upon the temperaments of the participants in the assault incident. 1A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 23.50 (1996). Recognizing the difficulty inherent in questioning the reasoning of eminent commentators such as Larson and Larson, it nonetheless seems that horseplay is also every bit as much a reaction to the effect of work surroundings on the participants' temperaments, albeit a reaction with a kinder and gentler intent. This is not to say that the result of horseplay is less disastrous for an injured employee than the result of an assault. Instead, we find that it is extremely difficult to draw meaningful distinctions between assault and horseplay cases when the genesis of the incident, be it horseplay or assault, is the work, not a purely personal problem, as in *Monahan v. United States Check Book Co., supra.* In fact, it seems that the intent and premeditation inherent in a "work-generated assault" situation would militate against compensability in an assault case because the employee seems further and more consciously removed from the work tasks, rather than forming a distinction for allowing compensation in the assault case but denying it in the horseplay case.

Having used 1A Larson & Larson, *supra*, § 23.50 et seq., in our analysis, we observe that the treatise contains 56 pages of text devoted to the subject of "horseplay," with numerous cases summarized therein. From our review of the treatise, it is apparent that workers can conjure up an endless variety of creative, foolish, and dangerous ways to "goof off" while on the job, often with disastrous consequences. Larson and Larson trace a number of variations upon the theme as to how various appellate courts have attempted to handle the problem of horseplay, which by its very definition and nature is a deviation from the typical employer's requirement that workers work. Larson and Larson suggest that courts should treat horseplay cases primarily as a problem of determining whether the injury arose in the course of the employment. For example, if the horseplay had become a continual practice in a particular employment, it would make the act a part of the employment because while engaging in the act, the claimant would not have left his employment. See *id.*, § 23.61.

We digress to point out that in the instant case there is no evidence that horseplay in general, or this specific type of horseplay, arm-wrestling in particular, had occurred with any pattern to make it part of the work environment. In fact, the record does not reveal any previous incidents of horseplay. Larson and Larson also discuss the notion that if the work is performed in a sportive manner, the result should not be a denial of compensation. Larson and Larson cite as an example a worker who steps into a hole on the job while daydreaming as contrasted to a worker who steps into the same hole because he is running, skipping, or turning handsprings. Larson and Larson assert that if both employees are on the move within the context of their jobs, they should both receive compensation because they are both merely performing their jobs in thoughtless, albeit different, ways. *Id.*, § 23.62(b). Traditional analysis would award benefits in the first instance without any limitation, whereas the second employee might have to fight over his benefits. Larson and Larson also detail a category of cases involving the effect of a lull in the work. Numerous courts have observed that lulls often lead to foolery and horseplay. See *id.*, § 23.65. Again, the evidence here is that the Fisher workers were sweeping the roof when the banter occurred about whether Gonzales and Varela had carried the appropriate weight of materials. This in turn led to the arm-wrestling challenge. If there was a lull in work, it was created by, rather than stimulating, the horseplay. Therefore, we do not believe the case can be decided on the notion that work lulls lead to horseplay.

Although direct and express prohibition of a particular act militates against the awarding of compensation because of the obvious departure from the tasks of the employment, the evidence here is of only a general prohibition against boisterous or disruptive activity or fighting. In the absence of a "Thou shalt not arm-wrestle" rule, we are disinclined to decide this case on the basis of the broad prohibitions in the employee handbook which, in any event, was published in English for an employee who apparently neither speaks, reads, nor writes English.

Larson and Larson conclude their analysis by asserting that the newer cases

> lend considerable support to the view that foolery, whether
> in the form of horseplay participation or some momentary
> act inspired by curiosity, should have the benefit of the
> general rule that trifling and insubstantial deviations,
> which do not measurably detract from the work, should not
> be treated as departures from the scope of employment.

1A Arthur Larson & Lex K. Larson, The Law of Workmen's
Compensation § 23.66 at 5-233 (1996).

■ The Workers' Compensation Court trial judge in this case
found that the deviation was momentary, was insubstantial, was
reasonably incident to the employment, and "created no
formidable independent hazard of injury." These conclusions
are all well sustained by the record. As Larson and Larson point
out, a horseplay case is not judged on the seriousness of the
injury which results, but, rather, it is the seriousness of the devi-
ation from the work which is important. *Id.*, § 23.00.

Although we might disagree with the trial judge's conclusion
that the arm-wrestling match was reasonably incident to
employment, he may have intended to suggest that it was not
beyond the realm of foreseeability that horseplay might occur
during the course of the workday.

■ We believe that Larson and Larson's proposed test for
compensability is appropriate and that certain incidents of
horseplay, resulting in injury, may be within the scope of
employment and arise out of it. We look to whether the devia-
tion was substantial because, obviously, Varela and Gonzales
were not directly working when the injury occurred. We find
that the work stoppage was of momentary duration, the injury
happened at the very outset of the horseplay, this was not the
sort of incident which carried a significant risk of serious injury,
and the incident was a trifling matter, at least in its intention by
the two employees. These factors lead to the conclusion that the
arm-wrestling was an insubstantial deviation and did not mea-
surably detract from the work (but for the injury). This is essen-
tially the analysis followed by the Wisconsin Court of Appeals
in *Bruns Volkswagen Inc. v. DILHR*, 110 Wis. 2d 319, 328
N.W.2d 886 (Wis. App. 1982), and that court also relied heav-
ily on the test postulated by Larson and Larson, as do we. Thus,
we hold that the injury occurred in the course of the employ-

ment as well as arose out of it. Accordingly, the Workers' Compensation Court trial judge did not err in awarding benefits.

## CROSS-APPEAL

Varela has cross-appealed and assigns as error the failure of the trial court to grant attorney fees, interest on the final award, and costs. Varela argues that medical bills in excess of $10,000 had been received by Fisher more than 30 days prior to trial and were recovered in the award and that a reasonable attorney fee "**shall** be allowed the employee by the Compensation Court **in** all cases where the employee receives an award." Brief for appellee on cross-appeal at 39. The statutory authority for this proposition is alleged to be § 48-125. Varela also argues that it naturally follows that if attorney fees are awarded, then interest must also be granted. Varela's counsel conceded at oral argument that if we rule against Varela on the attorney fees issue, we also of necessity would have to rule against him with respect to interest and costs. Section 48-125 provides that "fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability" and that in the event compensation or medical payments go unpaid for 30 days after injury or for 30 days after notice has been given of the obligation for medical payment and proceedings are held before the Workers' Compensation Court, then "a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award."

It is this statutory provision under which Varela claims attorney fees. Because the fees at issue in the cross-appeal relate only to services for the trial before the trial judge of the compensation court, we need not concern ourselves with those portions of § 48-125 which provide for fees for an employee in the event the employer unsuccessfully appeals to either a review panel of the compensation court, this court, or the Supreme Court. The fees for the unsuccessful appeal to the review panel have been awarded, and we will award fees, upon compliance with Neb. Ct. R. of Prac. 9F (rev. 1996), for the unsuccessful appeal to this court.

In his cross-appeal, Varela cites *Behrens v. American Stores Packing Co.*, 234 Neb. 25, 449 N.W.2d 197 (1989), for the

proposition that whether a reasonable controversy exists is irrelevant for the determination of the award of an attorney fee after the trial which results in the award of workers' compensation benefits. Although there is language to that effect in *Behrens*, it is not dispositive of the issue. The *Behrens* case involved whether attorney fees could be awarded by the compensation court after remand by the Supreme Court for another rehearing. The Supreme Court held that such fees were proper because even if the genesis of the rehearing were a remand, a rehearing is a rehearing. The language of *Behrens* which leads Varela to argue that a reasonable controversy has nothing to do with whether he is awarded an attorney fee at the trial level is as follows:

> The concept of the presence of a reasonable controversy is to be applied only to the determination as to whether an employee is entitled to the statutory penalties, not including attorney fees, as set out in § 48-125.
>
> Attorney fees are allowable only pursuant to statutory authorization. *Savage, supra*; *Harrington v. State*; 198 Neb. 4, 251 N.W.2d 653 (1977). Whether there is a reasonable controversy or not has nothing to do with the award of attorney fees in workers' compensation cases, except in cases where an employer has erroneously refused to make payments after having been given 30 days' notice of disability.

234 Neb. at 32, 449 N.W.2d at 201-02.

However, a more recent decision, *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996), implicitly suggests that the above-quoted language from *Behrens* perhaps sweeps too broadly. In *Kerkman*, the court stated:

> We have consistently held that where there is no reasonable controversy, § 48-125 authorizes the award of attorney fees. [Citations omitted.] Whether a reasonable controversy exists pertinent to § 48-125 is a question of fact. *Mendoza v. Omaha Meat Processors*, [225 Neb. 771, 408 N.W.2d 280 (1987)].
>
> . . . .
>
> More simply, to avoid the payment of attorney fees assessable under § 48-125, the employer must have a rea-

sonable basis in law or in fact for disputing the employee's claim and refrain from payment of compensation. *Mendoza v. Omaha Meat Processors, supra.* Because there was some conflict in the medical testimony adduced at trial, reasonable but opposite conclusions could be reached by the Workers' Compensation Court.

250 Neb. at 80, 547 N.W.2d at 158.

■ The court in *Mendoza v. Omaha Meat Processers*, 225 Neb. 771, 408 N.W.2d 280 (1987), holds that a reasonable controversy may exist where there is a question of law previously unanswered by the Supreme Court. *Mendoza* was decided before the existence of this court, and thus we believe the *Mendoza* holding needs a "friendly amendment" to the effect that if a question of law has not yet been decided by the Nebraska Supreme Court or Court of Appeals, there is a reasonable controversy. As earlier stated, there is no decided appellate case in this state on horseplay, and thus there is a reasonable controversy about the compensability of Varela's injury. Consequently, attorney fees are not allowable at the trial level under § 48-125. Since attorney fees are not allowable, interest on the final award cannot be awarded either. § 48-125.

■ Section 48-172 provides for the allowance of costs where an attorney fee is allowed under § 48-125. Because no fee was allowed at the trial level and the costs at issue for depositions and witnesses were incurred at the trial level, they cannot be awarded. Moreover, there is no authority under any circumstance to award the costs of an expert witness. See *Sherwood v. Gooch Milling & Elevator Co.*, 235 Neb. 26, 453 N.W.2d 461 (1990). Thus, there is no authority for an award of the $450 fee for Varela's expert witness for his deposition.

## CONCLUSION

We affirm the findings of the trial judge and the review panel that Varela sustained an injury caused by an accident arising out of and in the course of his employment. We also affirm the lower court's conclusion that there was a reasonable controversy, which precludes an award of attorney fees, interest, and costs. However, since Fisher and Union appealed to a review panel and did not obtain a reduction in the award and pursued a

second appeal to this court, again without reduction, we affirm the $2,000 attorney fee awarded by the review panel, and we will award Varela further fees for the appeal in this court under § 48-125 upon his compliance with Neb. Ct. R. of Prac. 9F (rev. 1996).

AFFIRMED.